JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIGS NYC LLC, EVANTHIA a/k/a "EVA" RAJWANS, and
BHUPINDAR a/k/a "BHINDA" RAJWANS

14 - CV 0538

                                        Plaintiffs,          COMPLAINT

        -against-

G.M. MADONNA & CO., LLC f/k/a DIGS MODA
GROUP, LLC f/k/a DIGS MODA LLC, MADONNA
& CO., LLC f/k/a DIGS MODA SOHO LLC,
MADONNAANDCO.COM, LLC f/k/a DIGS MODA.COM
LLC, and GERALYNN MADONNA

                                        Defendants.

---x

        Plaintiff DIGS NYC LLC ("Plaintiff DIGS"), plaintiff Evanthia a/k/a Eva Rajwans

("Plaintiff Eva") and Plaintiff Bhupindar a/k/a Bhinda Rajwan ("Plaintiff Bhinda")(collectively,

"Plaintiffs"), by their attorneys The Law Offices of Daniel A. Singer PLLC, as and for their

Complaint, respectfully alleges as follows:

                            THE PARTIES

        1.   Plaintiff DIGS is a New York limited liability company having a principal place of

business of 1054 3rd Avenue, New York, New York 10065.

        2.   Plaintiff Eva is a natural person having a principal business address of 1054 3rd

Avenue, New York, New York 10065.

        3.   Plaintiff Bhinda is a natural person having a principal business address of 1054 3rd

Avenue, New York, New York 10065.

        4.   Upon information and belief defendant G.M. Madonna & Co., LLC f/k/a DIGS Moda

Group, LLC f/k/a DIGSMODA LLC ("Defendant G.M. Madonna LLC" or "Defendant DIGS Moda Group, LLC" or "Defendant DIGSMODA LLC") is a New York limited liability company having a principal business address of 284 Lafayette Street, New York, New York 10012.

5.   Upon information and belief, Madonna & Co, LLC f/k/a DIGS Moda Soho LLC ("Defendant Madonna LLC" or "Defendant DIGS Moda Soho LLC") is a New York limited liability company having a principal business address of 284 Lafayette Street, New York 10012.

6.   Upon information and belief, Madonnaandco.com, LLC f/k/a DIGS Moda.Com LLC ("Defendant Madonnaandco.com" or "Defendant DIGS Moda.Com LLC) is a New York limited liability company having a principal business address of 284 Lafayette Street, New York 10012.

7.   Upon information and belief, defendant Geralynn Madonna ("Defendant Geralynn Madonna") is a natural person having a principal business address of 284 Lafayette Street, New York, New York 10012.

8.   Collectively, Defendant G.M. Madonna LLC, Defendant Madonna LLC, and Defendant Madonna.com are referred to hereinafter as the "Defendant Entities".

9.   Collectively, Defendant Geralynn Madonna and the Defendant Entities are referred to hereinafter as Defendants.

<u>NATURE OF ACTION, JURISDICTION, AND VENUE</u>

10. This is an action for trademark infringement under Section 32 of the Lantham Act, 15 U.S.C.A Sec. 1114 (Registered Trademark Infringement);  Section 43(a) of the Latham Act 15 USCA sec. 1125(a) (False Designation of Origin and Unfair Competition); Section 43(a) of the Latham Act, 15 USCA Sec. 1125(c)(Dilution); common law trademark infringement;

preliminary and permanent injunctive relief; unfair competition under New York common law; breach of contract under New York common law; unjust enrichment under New York common law; violation of Section 349 *et seq* of the New York General Business Law (Deceptive Acts and Practices); violation of Section 360 *et seq* of the New York General Business Law (Dilution and Likelihood of Injury to Business Reputation); and other related claims under New York common law.

11.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lantham Act, 15 USCA sec. 1121, 28 USCA sec. 1331 and sec. 1338, and has supplemental jurisdiction pursuant to 28 USCA 1367(a).

12.     Venue is proper in this district pursuant to 28 USCA §§ 1391(b) and (c).

## FACT COMMON TO ALL COUNTS

### The Formation of the Digs Master Brand and the Related Product Lines

13. Plaintiff DIGS was formed on or about July 6, 2005.

14. Plaintiff DIGS is a designer and retail purveyor of contemporary and luxurious yet affordable clothing and fashion accessories for women.

15. DIGS is an acronym for "Done In Great Style".

16. Since on or about August 1, 2005 Plaintiffs DIGS has been doing business as "DIGS", the name of its master brand (the "DIGS Master Brand" or the "DIGS Mark")

17. On or about July 2005, Plaintiff DIGS opened an office at 1466 Broadway, 5th Floor, New York, New York.

18. In or about November 2006, Plaintiff DIGS opened its first store at 1079 Third Avenue, New York, New York.

19. In or about September 2010, Plaintiff DIGS moved across the street to 1054 Third

3

Avenue, New York, New York and has maintained its flagship store at that location since that time (the "Real Digs Store" or the "Flagship Store").

20. Plaintiff DIGS officially launched its e-commerce site in or about November 2007.

21. Plaintiff Eva is the Chief Executive Officer of Plaintiff DIGS.

22. Plaintiff Bhinda is the Chief Operating Officer of Plaintiff DIGS.

23. Plaintiff DIGS offers various lines of clothing and accessories identified as follows: "Royal DIGS", a clothing line which commenced on or about November 11, 2006 (the "Royal DIGS Mark"); "DIGS Couture", a clothing line which commenced on or about January 1, 2011 (the "DIGS Couture Mark"); "Vintage DIGS", a clothing line which commenced on or about November 11, 2006 (the "Vintage DIGS Mark"); "DIGS Bijoux", a jewelry line which commenced on or about January 1, 2011 (the "DIGS Bijoux Mark"); "DIGS Clean", a clothing line which commenced on or about January 1, 2011 ("DIGS Clean Mark"); DIGS Beaute, a cosmetics line which commenced on or about October 15, 2011 (the "DIGS Beaute Mark"); and DIGS Luxury Beach, a clothing line which commenced on or about January 1, 2011 (the "DIGS Luxury Beach Mark") (collectively, the "Trademarked Lines").

24. The Vintage DIGS Mark was duly registered with the United States Patent and Trademark Office ("USPTO") on October 23, 2007 (See, Exhibit A).

25. The Royal DIGS Mark was duly registered with the USPTO on October 23, 2007 (See, Exhibit A).

26. The DIGS Bijoux Mark was duly registered with the USPTO on April 9, 2013 (See, Exhibit A).

27. The DIGS Beaute Mark was duly registered with the USPTO on April 9, 2013 (See, Exhibit A).

4

28. On December 14, 2013, an application to register the DIGS Mark was filed with the USPTO, citing a first use date of August 1, 2005. (See, Exhibit B).

29. Since their respective originate dates, Plaintiffs have actively and independently promoted the DIGS Master Brand and each of the respective Trademarked Lines (collectively, the "Subject Marks").

30. The name "DIGS" and each of the respective Trademarked Lines have developed a secondary meaning in the marketplace such that they are exclusively associated in the mind of the public with Plaintiff DIGS at the exclusion of other entities.

**Joint-Venture with Defendant Geralynne Madonna**

31. In or about April 2011, Plaintiffs were approached by Defendant Geralynn Madonna regarding establishing a joint-venture.

32. Defendant Geralynn Madonna was an avid customer of DIGS and an admirer of the Master Brand and its associated lines.

33. At the time, Defendant Geralynn Madonna represented that she was the Chief Executive Officer of the fashion catalogue known as Spiegel, Newport News, and Shape FX ("Spiegel").

34. Defendant advised Plaintiffs that she was voluntarily leaving the Spiegel out of desire to do something different.

35. Defendant Geralynn Madonna further represented to Plaintiffs that she had the contacts, expertise, and background to expand DIGS.

36. Indeed, the primary purpose of the proposed joint venture was to expand DIGS beyond the Flagship Store at 1054 Third Avenue, New York, New York.

37. Following discussions, Plaintiff Eva, Plaintiff Bhinda, and Defendant Geralynn

Madonna formed the entity known originally as Defendant DIGS MODA LLC on or about September 6, 2011, thereafter changing its name to Defendant DIGS Moda Group LLC on or about September 8, 2011 (such entity is now known as Defendant G.M. Madonna & Co).

38. Plaintiff Eva, Plaintiff Bhinda, and Defendant Geralynn Madonna executed  an operating agreement for Defendant DIGS Moda Group LLC which was effective as of September 6, 2011 (the "DIGS Moda Group LLC Operating Agreement", annexed hereto as Exhibit "C").

39. Pursuant to the DIGS Moda Group LLC Operating Agreement, Plaintiff Bhinda and Plaintiff Eva owned a joint 50% membership interest in Digs Moda Group LLC while Defendant Geralynn Madonna held the remaining 50% interest.

40. Pursuant to the DIGS Moda Group LLC Operating Agreement, DIGS Moda Group LLC was provided with a license to use what is acknowledged therein as  Plaintiffs' trademarks "DIGS", "Royal DIGS", "Vintage DIGS", "DIGS Couture" and "DIGS Bijoux" as well as what was acknowledged therein as being Plaintiff's domain names "GlamorousDIGS.com" and "Digsmoda.com" ("Plaintiffs' Intellectual Property License to DIGS Moda Group LLC").

41. In pertinent part, Plaintiffs' Intellectual Property License to DIGS Moda Group LLC was provided in consideration for Plaintiff Eva and Plaintiff Bhinda receiving their jointly held 50% membership interest in DIGS Moda Group LLC.

42. Section 2.2.2. of The Digs Moda Group LLC Operating Agreement set forth in pertinent part as follows with respect to Plaintiffs' Intellectual Property License to DIGS Moda Group LLC:

> As consideration for the Rajwan Membership Units, Digs NYC LLC, having full power and authority to license the Trademarks [defined therein to include "Digs", "Royal Digs", "Vintage Digs", "Digs Couture" and "Digs bijoux"] and Domain Names [defined therein to include GlamorousDIGS.com and Digsmoda.com],

> hereby grants to the Company an irrevocable, exclusive, fully paid up, royalty free right to use the Trademarks and Domain Names for an initial period of five years from the Effective Date for any purpose in furtherance of the Company Business ("Trademark and Domain Name License") after which point the irrevocable, exclusive, fully paid up, royalty-free Trademarks and Domain Names License shall become perpetual, *provided that* the Company does not dissolve, become insolvent or cease its business operation before such date, in which case, the Trademark and Domain Name License shall be immediately terminated and all rights granted therein shall revert to DIGS NYC LLC.

(emphasis included)

43. The DIGS Moda Group LLC Operating Agreement clearly provided that Plaintiff DIGS and any of its successors and assigns could continue to use the intellectual property subject to the Intellectual Property License to DIGS Moda Group LLC at its Flagship Store. (Exhibit C, Section 2.9)

44. On or about September 6, 2011, Plaintiff Bhinda, Plaintiff Eva, and Defendant Geralynn Madonna formed Defendant DIGS Moda.com LLC with Defendant DIGS Moda Group LLC as its sole member.

45. On or about September 7, 2011, Plaintiff Bhinda, Plaintiff Eva, and Defendant Geralynn Madonna formed Defendant DIGS Moda Soho LLC with DIGS Moda Group LLC as its sole member.

46. In or about December 2011, Plaintiff Bhinda, Plaintiff Eva, and Defendant Geralynn Madonna, opened a store at 284 Lafayette Street, New York, New York 10012 which did business under the name "DIGS Soho" (the "Digs Soho Store").

47. The Digs Soho Store was operated by Defendant Digs Moda Soho LLC.

48. Following the opening of the DIGS Soho Store, it became abundantly clear to Plaintiffs

that, contrary to her representations to Plaintiffs, Defendant Geralynn Madonna did not have the expertise, background, or contacts necessary to expand the Digs Master Brand.

49. Following the opening of the DIGS Soho Store, Plaintiffs also learned that Defendant Geralynn Madonna had lied about voluntarily leaving Spiegel and, in fact, had been forced to resign from Spiegel as a result of the fact that Spiegel's parent company Signatures Styles was in the process of filing for bankruptcy.

50. Indeed, if Plaintiffs had known that Defendant Geralynn Madonna was leaving Spiegel due to the economic conditions of Spiegel, they would not have participated in a joint venture with her.

51. Moreover, except for a single payment which was made in or about March 2012, Plaintiff Eva and Plaintiff Bhinda were not even paid the minimal monthly draw of $2000.00 which they were required to be paid pursuant paragraph 3.2 of DIGS Moda Group LLC Operating Agreement.

52. As a consequence thereof, Plaintiffs determined that it was time to terminate their relationship with Defendant Geralynn Madonna so that they could continue to maintain and develop the DIGS Master Brand and the various Trademarked Lines on their own.

53. Several months of negotiations culminated in the execution of the Membership Transfer Agreement on or about September 23, 2013, a copy which is annexed hereto as Exhibit "D".

54. The sum and substance of the Membership Transfer Agreement was that Plaintiffs' Intellectual Property License to DIGS Moda Group, LLC was terminated while Plaintiff Bhinda and Plaintiff Eva assigned all of their rights and interest in Defendant Digs Moda Group, LLC to Defendant Geralynn Madonna.

55. Section 1.02.2.1 of the Membership Transfer Agreement provides, in pertinent part,

8

as follows:

> The rights granted by and between the Company, DIGS NYC LLC, Geralynn and the Rajwans by Section 2.2.2 of the Operating Agreement shall be amended and modified as follows:
>
> a) Notwithstanding anything in the Operating Agreement to the contrary, the Company's license to use the following trademarks shall terminate at the end of the "Transition Period" as such term is defined in Section 1.03: "DIGS", "Royal Digs", "Vintage Digs", "Digs Couture", and "Digs Bijoux". It is expressly understood and agreed among the parties that the Company may continue to use the aforementioned Trademarks at the Store operated by DIGS MODA SOHO LLC and through the Domain Name digsmoda.com until the end of the Transition Period (and as set forth in 1.02.2.6 and 1.03.2).
>
> b) Notwithstanding anything in the Operating Agreement to the contrary, the Company's license to use the Domain Name GlamorousDigs.com shall terminate on the Effective Date [defined as being September 23, 2013].

(emphasis added).

56. Indeed, as set forth in Section 1.02.2.1(c) of the Membership Transfer Agreement, the only aspect of the Intellectual Property License retained by Defendant DIGS Moda Group, LLC was the right to use the domain name digsmoda.com but for the sole purpose of using it to re-direct traffic to its new website:

> Notwithstanding anything in the Operating Agreement to the contrary, (1) the Company's license to use the Domain Name digsmoda.com shall terminate at the end of the Transition Period as qualified below; and (2) the Rajwans, individually or jointly, and any entity in which the Rajwans, individually or jointly, are members, shareholders, partners, or in which either or both have any interest, or any entity affiliated with any entity in which the Rajwans, individually or jointly, are members shareholders, partners, or in which either or both have any interest, or any entity affiliated with any entity in which the Rajwans, individually or jointly, have an interest, including without limitation DIGS NYC

LLC, shall not use the Domain Name digsmoda.com nor any other
internet variation or top-level domain name that includes the word
'digsmoda' (for example and without limitation, 'digsmoda.net',
'digsmoda.org') or any combination of words that include both the
words 'digs' and 'moda' for any purpose whatsoever, included but
not limited to redirecting traffic to other sites. Notwithstanding this
Section 1.02.2.1(c), the Company and/or Digs Moda.com LLC
shall retain ownership and the right, title, and interest in the
Domain Name digsmoda.com for the sole purpose of redirecting
traffic from digsmoda.com to any new website and all other web
related affiliates, placements, etc. operated by the Company and/or
any entity in which Geralynn is a member, shareholder, or partner.

(emphasis added).

57. With respect to the "Transition Period", the Membership Transfer Agreement

provides, in pertinent part, as follows:

1.03: Transition Period. The time immediately following the
Effective Date and running through and ending at the close of
business of October 30, 2013 shall be the "Transition Period".

1.03.1 Notwithstanding anything in the Agreement to the contrary,
during the Transition Period, the Company shall continue to have
the right to use the Trademarks and the Domain Name
digsmoda.com as set forth in the Operating Agreement. The
Company may, however, at an earlier date of its choosing,
commence operations under a new name, with the Transition
Period as relating to the usage of the Trademarks and the Domain
name digsmoda.com deemed to have ended upon such date (other
than as set forth in 1.02.2.6 and 1.03.2). It is understood that at the
end of the Transition Period the name "Digs" shall be removed
from signage on the main door, the top window, flag, mat,
projector image, hangers, and packaging .

1.03.02 Prior to the conclusion of the Transition Period, the
Company shall change its name to any new name chosen by the
Company by amending the Articles of Organization by the filing of
the Certificate of Amendment with the New York State
Department of State, Division of Corporations. The Company shall
cause DIGS MODA SOHO LLC to the do the same. The Company
(i.e. DIGS MODA GROUP, LLC) and DIGS MODA SOHO LLC
shall be continued without dissolution, as this is a name change

only. Further, DIGS MODA.COM LLC shall be continued without dissolution, and no name change is required.

(emphasis added)

58. Pursuant to the clear terms of the Membership Transfer Agreement, following the end of the Transition Period at the close of business on October 30, 2013, the Intellectual Property License to DIGS Moda Group LLC terminated and Defendants were precluded from using any of the Subject Marks or otherwise associating themselves with the DIGS Master Brand and any of the other Trademarked Lines (See, Exhibit D, Section 1.03)

59. The one narrowly tailored exception to this exclusion from the use of the Subject Marks was that Defendants were to be able to continue to use the domain name digsmoda.com but only for the sole purpose of redirecting traffic to its new website. In other words, if one were to type in the web address "digsmoda.com" they would be directed to a website which contained a name other than "DIGS" or some derivation or association therewith.

60. Indeed, the clear principal behind the Membership Transfer Agreement was a permanent disassociation between Defendants and the DIGS Master Brand and any other Trademarked Lines.

61. Despite the clear and unequivocal terms of the Membership Transfer Agreement, Defendants have continued to use the Subject Marks in order to obtain a commercial advantage over Plaintiffs.

**Defendant's Infringements**

62. Since the Termination of the Transition Period, Defendants have engaged in a plethora actions which infringe upon the Subject Marks, described in detail below and referred to hereinafter as the "Subject Infringements."

11

Encoding of Defendants' URL with the Subject Marks and Embedding the Subject Marks in
Defendants' Webpages

63. Consistent with the Membership Transfer Agreement, the Entity Defendants legally

changed their name with the New York Department of State so as to ensure that there was no

longer any reference to any of the Subject Marks in such names. (Exhibit "E").

64. Upon information and belief, since the termination of the transition period, Defendants

have been operating an e-commerce business via the domain name "madonnaandco.com"

("Defendant's Post-Transition Domain Name" or "Defendants' Website")

65.  When Defendant's Post-Transition Domain Name appears in the search engine listings,

it appears with the tag line which reads as follows "About Madonna &     Co-Clothing-

Collections-Dresses". (Exhibit "F[1]").

66. Each of the hyphenated words in the tagline contains a hyperlink.

67. Upon "clicking" on the "Clothing" hyperlink, the user is brought to a webpage identified

by the following URL:

www.madoonanadco.com/DIGS-Clothing. (Exhibit F)

68. Similarly upon clicking on the "Collections" hyperlink, the User is brought to the website

listing, as the "Collections", Plaintiff DIGS' Trademarked Lines, including "Royal DIGS",

"DIGS Couture", "Vintage DIGS", "DIGS Bijoux", "DIGS Clean", "DIGS Beaute", and "DIGS

Luxury Beach". (Exhibit "F").

*The Impact of Defendants' Encoding their URL with the Subject Marks and Defendants'
Embedding the Subject Marks in Their Webpages on Internet Searches*

69. Upon information and belief, Defendants are embedding the DIGS Mark in its URL and

---

[1] Certain items have been circled by Plaintiffs in the screenshot exhibits attached hereto in order to highlight the
Subject Infringements.

listing the Trademarked Lines on its webpages in order to cause consumers who are conducting web searches for the DIGS Master Brand, the Trademarked Lines, and terms associated therewith to be directed to Defendants' Website.

70. As set forth in the examples below, such embedding of the DIGS Mark in Defendants' Website's URL and Defendants' listing of the Trademarked Lines on Defendants' webpages causes Defendants' Website to appear ahead of (or, at the very least, in close proximity of) Plaintiffs' website www.digsny.com ("Plaintiff DIGS' Website") and/or other sites referencing the Flagship Store in Internet searches for the DIGS Master Brand, the Trademarked Lines, and/or terms associated therewith.

71. A search for the trademarked "DIGS Beaute" on Yahoo! on December 11, 2013, for example, led to Defendants' Website appearing on the first page of the search results and ahead of the Plaintiff DIGS' Website www.digsny.com with the heading "Collections at Madonna & Co" (Exhibit "G"). Worse yet, the Trademarked Lines "DIGS Beaute" and "DIGS Luxury Beach" appeared directly below Defendant's Post-Transition Domain Name (Exhibit "G"). Worse still, upon "clicking" on Defendant's Post-Transition Domain Name, one is directed to Defendant's webpage containing a list of all of the Trademarked Lines. (Exhibit "G"). This search has been repeated on multiple occasions since December 11, 2013 and has resulted in the same or similar results (see, by example, the search conducted on December 29, 2013, Exhibit H, hereto).

72. Similarly a search of the Trademarked Line DIGS Bijoux on December 11, 2013 on Google resulted in Defendants' Website appearing on the first page of Google, ahead of Plaintiff Digs' Website with the same heading- "Collections at Madonna & Co"- and identification of the Trademarked Lines in the underwriting (Exhibit I). Worse yet, clicking on the hyperlink directed

13

the user to Defendant's webpage www.madonnaandco.com/Collection/ on which was displayed Plaintiffs' Trademarked Lines (Exhibit I). Worse yet, that webpage contained a link to Defendants' collection of knits (Exhibit I).

73. Similarly, when a search for the term "royal digs clothing" was conducted on December 11, 2013, Defendants' Website appeared on the first page, again ahead of Plaintiff's Website (Exhibit "J"). Worse yet, Defendants' Website appeared in the search under the Pre-Transition Domain Name www.digsmoda.com, which is an express violation of the Membership Transfer Agreement. Upon clicking on the hyperlink, one is directed to a webpage on Defendants' Website promoting jackets (Exhibit "J").

74. Similarly, a search for the trademarked term "Digs Bijoux" on Yahoo! on December 11, 2013 resulted in the appearance on the Defendants' Website on the first page of the search results with the weblink www.digsmoda.com/Swarovski-Crystal-Bracelet.html. Clicking on the weblink brings the user to a webpage on Defendants' Website where Defendants' merchandise (specifically a bracelet) is being offered for sale (Exhibit K). Again, Defendants are attempting to mislead the consumer by wrongfully associating the Trademarked Lines with its product.

75. Moreover, when conducting searches on Google for terms commonly associated with the Digs Master Brand- such as, by mere example, "Digs Clothing", "digs clothing new york", "digs new york", "digs boutique", "Digs Store NYC", and "digs nyc", Defendant's Website- along with the aforementioned infringing "Clothing" and "Collections" hyperlinks- typically appears ahead of the Plaintiff Digs' website www.digsny.com ("Plaintiff Digs' Website") in the listing or, at the very least appearing in close proximity to Plaintiff's Website (Exhibit "L").

76. Even a search for Defendants' own store name "Madonna & Co" reveals the infringing

"Clothing" and "Collections" hyperlink (Exhibit L), created further confusion in the mind of the public by misrepresenting a relationship between the DIGS Master Brand and Defendants which simply does not exist.

*The Placement of Defendants' Google Adword Advertisements*

77. Defendants have an array of advertisements and postings on the Internet.

78. Such advertisements include, by mere example, paying for "Google AdWord" advertisements ("Defendants' Adword Advertisements").

79. Plaintiff DIGS also pays for Google Adword Advertisements ("Plaintiff's Adword Advertisments").

80. Upon information and belief, because of the embedding of the DIGS Mark in Defendants' URL, the listing of the Trademarked Lines on it webpages, and other infringing associations with the Subject Marks, searches relating to the Subject Marks result in the appearance of Defendants' Adword Advertisements ahead of and/or in close proximity of Plaintiff's Adword Advertisements in the search results and, at times, even appearing at the exclusion of Plaintiff's Adword Advertisements. Examples of these are annexed hereto as Exhibit "M".

Defendants' Violative and Deceptive Third Party Postings

81. Defendants have placed postings on websites throughout the Internet depicting false and misleading associations between its store name, on the one hand, and the Digs Masterbrand and Trademarked Lines, on the other. This has included, by mere example and without limitation, including discussions of the DIGS Masterbrand and/or Trademarked Lines in postings regarding Defendants' Soho Store; referring to the Soho Store as "DIGS"; including the DIGS logo in postings regarding Defendants' Madonna Soho Store; and/or referring to the Madonna Soho

Store as "formerly DIGS Moda Soho" or "formerly DIGS, Soho" or implying some other current or former association with the Digs Master Brand in its postings. (Exhibit "N")

82. By illustration, the listing for the Madonna Soho Store on Yahoo! has been found to include a slideshow featuring products from the DIGS Master Brand and Trademarked Lines (Exhibit "O"). Moreover, Defendants' listing on Yahoo! has been found to refer to the Soho Store as "Formely Digs Moda Soho" or "Formerly Digs, Soho" so as to unlawfully associate their store and brand with the Subject Marks and infringe thereon in order to deceive the public and obtain a commercial advantage over Plaintiffs. (Exhibit "O").

83. Defendants have also been selling merchandise on third party sites, referencing such merchandise as being part of the Trademarked Lines. By example, Defendants have been selling their tank tops and pants on the website www.shoptiques.com falsely stating that such clothing is part of the Royal DIGS Trade Marked Line. (Exhibit "P").

84. Similarly, Defendants posted their merchandise on the website www.snapette.com, falsely stating that it was part of the DIGS Master Brand and the DIGS Couture Trademarked Line at "DIGS, SOHO." (Exhibit "Q"). The infringing references were removed from www.snapette.com after Plaintiffs sent a cease and desist letter to the site webmaster.

85. Defendant has also infringed upon the Subject Marks through its posting on newyork.citysearch.com. While Defendants have posted under the new name of their store "Madonna & Co", they have continued to use reviews containing references to the Soho Store as "Digs, Soho", thus creating confusion for the consumer (See, Exhibit R).

86. Another example of Defendants' infringements is associating their business with DIGS on the website www.whitepages.com (See, Exhibit "S").

*Defendants' Violative Postings on Facebook*

87. Defendants' postings on Facebook have been particularly egregious.

88. First, on October 31, 2013, immediately following the termination of the Transition Period, Defendants issued a posting stating "Our New DIGS" on its Facebook page ("Defendants' Facebook Page") clearly misleading the public into believing that the Madonna Soho Store continued to be linked to the DIGS Master Brands (See, Exhibit "T").

89. Moreover, following the termination of the Transition Period, Defendants created and/or continued to maintain a plethora of links to the DIGS Master Brand merchandise, merchandise pertaining to the Trademarked Lines, as well as references to the Subject Marks in general (Exhibit U).

90. On at least three (3) occasions, Plaintiffs corresponded with Facebook to have the violative links removed and on each such occasion Facebook complied, with Defendants merely reposting such links following their removal.

91. Upon information and belief, Defendants have now been precluded by Facebook from reposting such links.

*Defendant's Violative Postings on Yelp*

92. Following the Transition Period, Defendants have been posting their store on Yelp! as "Digs Moda" in complete violation of the Membership Transfer Agreement (Exhibit "V")

93. Further infringing on the Subject Marks, Defendants describe their store as being a continuation of the DIGS Master Brand: "We opened in Soho at 284 Lafayette Street in December 2011 as DIGS Moda Soho. We recently changed our name to Madonna & CO. and have added many new exciting lines, and one a kind vintage" (Exhibit V, emphasis added).

94. Indeed, the mere reference to "DIGS" constitutes an infringement of the Subject Marks as well as a violation of the Membership Transfer Agreement.

17

95. Moreover, by erroneously stating that it has "added many new exciting lines" (clearly implying that the DIGS Masterbrand and Trademarked Lines are still available at the Madonna Soho Store), Defendants are confusing the public in erroneously attempting to make them believe that the Madonna Soho Store continues to be a "DIGS" operation.

96. Plaintiffs have communicated with Yelp on several occasions regarding these violations.

97. Initially, Yelp listed the Soho Store as being "closed" and thereafter listed it as having been "renovated" on or about November 12, 2013, changing the status again to closed on or about November 16, 2013 and then finally listing it again as having been "renovated" on or about December  10, 2013 (Exhibit "V").

98. Yelp has not removed the violative language (Exhibit V) from its listing and appears to be refusing to do so absent judicial intervention.

*Defendant's Google Listings*

99. Following the Transition Period, Defendants listed itself on Google as "DIGS SOHO" in clear violation of the Membership Transfer Agreement and a clear infringement on the Subject Marks. (the "DIGS SOHO Listing", Exhibit W).

100.      Indeed, the address, phone number, and hours of the Madonna Soho Store were all listed under the DIGS SOHO Listing in a clear attempt to confuse the consumer into believing that the Madonna Soho Store continued to be part of the DIGS Master Brand (Exhibit W).

101.      Worse yet, the DIGS SOHO Listing often appeared with links to other sites, such as merchantcircle.com, which contain information relating to Defendants.

102.      Indeed, clicking on the hyperlink on the DIGS SOHO Listing would bring the user to the Defendants' listing on merchantcircle.com, again falsely representing that Defendants' are somehow associated with the DIGS Master Brand.

103.     On or about November 7, 2013, Plaintiffs advised Google of the Subject

Infringements resulting in Google listing Digs Soho as being "closed or relocated." (Exhibit W)

104.     The DIGS SOHO Listing was posted again by Defendants on November 21, 2013

and thereafter, again subsequently removed by Google (Exhibit W[2]).

105.     On or about November 27, 2013, after being posted again by Defendants for at

least the third time was marked by Google being permanently closed (Exhibit W).

106.     Causing further confusion for consumers, Defendants also created a "google

page" following the Transition Period containing icons pertaining to both Plaintiffs and

Defendants (Exhibit X).

*Defendants' Infringing Twitter Postings*

107.     Upon information and belief, Defendants maintain a twitter Account identified as

https://twitter.com/madonnaandco ("Defendants' Twitter Account").

108.     Following the Transition Period, Defendants have posted and/or have caused

postings to be rendered and/or have maintained posting on their Twitter Account which

associate Defendants with the DIGS Master Brand.

109.     By mere example, a screenshot of the Twitter Account taken on December 29,

2013 show a Twitter posting regarding an interview with DIGS designer Plaintiff Eva (Exhibit

"Y"). By posting and/or maintaining Twitter postings that associate Defendants with the DIGS

Master Brand, Defendants are creating confusion among the public.

*Defendants' Infringing Yahoo! Postings*

110.     Upon information and belief, following the transition period, Defendants posted

---

[2] The November 21, 2013 screenshot contains typewritten markings inserted by Plaintiffs for illustrative purposes.

and/or maintained a listing on Yahoo! for "DIGS", identifying it as the "DIGS flagship store" and providing the address of the Madonna Soho Store as well as identifying it with the domain name digsmoda.com (Exhibit "Z")

111.     Following the Transition Period, a search on Yahoo! for the term "digs" would generate a listing for the Madonna Soho Store, identifying it as DIGS (Exhibit "AA").

112.     Following the Transition Period, Defendants altered the listing on Yahoo! so as to set forth the hours of the Madonna Soho Store as being "open until 8 pm." Indeed, clicking on the "info" hyperlink would bring the user to a page containing a more detailed listing (Exhibit "AA").

113.     At no time following the Transition Period did Defendants change, alter, or otherwise correct the subject listing so as to eliminate any reference to "DIGS" and/or "digsmoda.com" as required by the Membership Transfer Agreement.

114.     The subject Yahoo! listing was clearly causing confusion in the minds of consumers by erroneously associating the Digs Master Brand with Plaintiffs.

115.     The subject Yahoo! listing constituted a clear infringement on the Subject Marks.

116.     Following the Transition Period, Plaintiffs communicated with Yahoo! regarding the subject infringement resulting in the removal of the subject Yahoo! listing

*Infringement Via the Allyson Paul Pseudonym*

117.     Upon information and belief, Defendants are placing postings on third party sites under the pseudonym Allyson Paul.

118.     Such postings purport to establish a relationship between the Digs Master Brand and the Madonna Soho Store.

119.     Such postings have appeared on a variety of third party sites including, by mere

example, "plus.google.com", "alibaba.com", "pinteinterest.com" (See, Exhibit BB).

120. Such postings have been set forth in order to confuse the public into erroneously believing that there continues to be a relationship between Defendants and the DIGS Master Brand.

121. Such postings infringe upon the Subject Marks.

122. Such postings also violate the Membership Transfer Agreement.

Defendants' Infringing Email Communication

123. Upon information and belief, Defendants have been forwarding email communication to Plaintiffs' clients identifying the Madonna Soho Store as being "formerly DIGs Soho".

124. Defendants' use of the term "formerly DIGS Soho" in association with the Madonna Soho Store constitutes an infringement of the Subject Marks and a violation of the Membership Transfer Agreement.

125. Upon information and belief, Defendants have set forth such emails in order to confuse consumers and misappropriate commercial opportunities from Plaintiffs.

126. As set forth above, Defendants' malfeasant conduct is causing a high likelihood of confusion in the minds of the public as it is leading consumers to wrongfully conclude that Defendants are purveyors of the DIGS Master Brand and the Trademarked Lines.

127. Defendants are engaging is such conduct so as to capitalize on the commercial value of the DIGS Master Brand and the Trademarked Lines to the extreme detriment of Plaintiffs.

128. As set forth in detail below, Defendants' conduct not only constitutes an

infringement of the Subject Marks but also constitutes a clear breach of the Member Transfer Agreement.

129.     On or about November 18, 2013, Plaintiffs corresponded with Defendants demanding that they cease and desist from engaging in the aforementioned infringing conduct as well as to render payment to Plaintiffs as a result of the damages caused by such conduct.

130.     Defendants failed to comply with Plaintiff's demands thus necessitating the commencement of this action.

## COUNT I

131.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 130 as if set forth at length herein.

132.     As set forth herein, Defendant's have committed the Subject Infringements in interstate commerce.

133.     The Subject Infringements have occurred in connection with the sale, offering for sale, distribution, and/or advertising of goods as set forth herein.

134.     Defendants use of the Subject Marks is likely to cause confusion, or cause mistake, or to deceive as set forth herein.

135.     As set forth herein, Defendants have used the Subject Marks in connection with goods which are both related and competitive with Plaintiff's goods.

136.     As set forth herein, Defendants' actions constitute infringement of Plaintiff's Subject Marks in violation of Plaintiff's rights under Section 32 of the Lantham Act. 15 U.S.C.A. § 1114.

137.     As a direct result of Defendants' unlawful actions, Plaintiffs have

suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

138.    Defendants' conduct has caused and will continue to cause injury to Plaintiffs and will continue to both damage Plaintiffs and the public unless enjoined by the Court.

139.    Plaintiffs have no adequate remedy at law.

## COUNT II

140.    Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 139 as if set forth at length herein.

141.    Defendants' use of the Subject Marks and other designations as well as the association with Plaintiff DIGS' name and goodwill established over the years by Plaintiffs, is intended, and is likely to confuse, mislead, or deceive the consumer, the public and the trade as to the origin, source, sponsorship, association, or affiliation of products bearing the Subject Marks, and is intended, and is likely to cause such parties to believe in error that the products bearing the Subject Marks have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs or that the Defendants are in some way affiliated with Plaintiffs.

142.    Defendants' malfeasant acts constitute a false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lantham Act (15 USCA 1125(a)).

143.    Upon information and belief, by its acts, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

144.    Upon information and belief, Defendants intend to continue its willfully infringing acts unless restrained by this Court.

145.    Defendants' acts have damaged and will continue to damage Plaintiff unless

enjoined by this Court.

146.     Plaintiffs' have no adequate remedy at law.

## COUNT III

147.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 146 as if set forth at length herein.

148.     Plaintiffs are the exclusive owners of the Subject Marks.

149.     The Subject Marks are strong and distinctive and have achieved widespread public recognition.

150.     The Subject Marks are famous within the meaning of Section 43(c) of the Lantham Act (15 USCA §1125(c)).

151.     Defendants' use of the Subject Marks, without authorization from Plaintiffs, is diluting the distinctive quality of the Subject Marks and decreasing the capacity of such marks to identify and distinguish Plaintiffs' products.

152.     Defendants have intentionally and willfully diluted the distinctive quality of the Subject Marks in violation of Section 43(c) of the Lanham Act, 15 USCA §1125(c).

153.     Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this court.

154.     Defendants' acts have damaged and will continue to damage Plaintiffs and Plaintiffs have no adequate remedy at law.

## COUNT IV

155.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 154 as if set forth at length herein.

156.     Plaintiffs own all right, title, and interest in the Subject Marks as aforesaid,

24

including all common law rights in such marks, and such marks are distinctive.

157.     The aforesaid malfeasant acts constitute trademark infringements in violation of the common law of the State of New York.

158.     Upon information and belief, Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled.

159.     Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this court.

160.     Defendants have damaged and will continue to damage Plaintiffs.

161.     Plaintiffs have no adequate remedy at law.

## COUNT V

162.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 161 as if set forth at length herein.

163.     As set forth herein, Plaintiffs, on the one hand, and Defendants, on the other, executed the Membership Transfer Agreement which had an effective date of September 23, 2013.

164.     Pursuant to the terms of the Membership Transfer Agreement, Plaintiffs' Intellectual Property License to Defendant Digs Moda LLC terminated as set forth therein.

165.     Pursuant to the terms of the Membership Transfer Agreement, Defendants were permitted to use the domain name www.digsmoda.com for the sole purpose of redirecting web traffic to their new website.

166.     As set forth herein, Defendants have violated the Membership Transfer Agreement by continuing to use the Subject Marks.

25

167.     As set forth herein, Defendants have violated the Membership Transfer Agreement by utilizing the domain name www.digsmoda.com for purposes other than redirecting web traffic to their new website.

168.     As a result of Defendants' breaches of the Membership Transfer Agreement, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VI

169.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 168 as if set forth at length herein.

170.     Defendants have engaged in unfair competition by committing the Subject Infringements as set forth herein.

171.     By committing the Subject Infringements, Defendants have caused themselves to be mistaken for Plaintiffs among the public.

172.     The Defendants committed the Subject Infringements in bad faith with the intent to deceive the public into thinking that Defendants were in fact Plaintiffs and/or were continuing to work in association with Plaintiffs.

173.     The Defendants deliberately and intentionally made such misrepresentations in order to defer customers from Plaintiffs to Defendants.

174.     Plaintiffs engaged in the Subject Infringements and misappropriated the Subject Marks in order to capitalize on the value of the DIGS Master Brand and the Trademarked Lines as well as on Plaintiffs' business reputation.

175.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

176.     As a result of the foregoing, Plaintiffs are entitled to a judgment against

Defendants in an amount to be determined at trial.

## COUNT VII

177.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 176 as if set forth at length herein.

178.     Defendants' Subject Infringements and malfeasant acts constitute unlawful and deceptive acts and practices pursuant to New York General Business Law §349 et seq.

179.     Plaintiffs have been damaged and continue to be damaged as a result of Defendants' unlawful and deceptive acts and practices.

180.     Pursuant to New York General Business Law §349(h), Plaintiffs are entitled to damages from Defendants in an amount to be determined at trial.

181.     Pursuant to New York General Business Law §349(h), Plaintiffs are entitled to injunctive relief precluding Defendants from continuing to engage in such unlawful and deceptive act and practices.

182.     As a result of the foregoing, it is respectfully requested that this Court issue a judgment against Defendants and in favor of Plaintiffs in an amount to be determined at trial.

183.     As a result of the foregoing, it is respectfully requested that this Court issue an injunction against Defendants precluding them from engaging in the aforementioned deceptive acts and practices.

184.     Plaintiffs have no adequate remedy at law.

## COUNT VIII

185.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 184 as if set forth at length herein.

186.     Defendants' Subject Infringements and malfeasant acts and practices constitute

trademark infringement and dilution under New York General Business Law Section 360 et seq.

187.     Defendants have been damaged and continued to be damaged as a result of Defendants' Subject Infringements and dilution as herein described.

188.     Pursuant to New York General Business Law Section 360 et seq, Defendants are entitled to damages in an amount to determined trial, including an award of triple damages and attorneys' fees, costs, and disbursements.

189.     Pursuant to New York General Business Law Section 360 et seq., Defendants are entitled to injunctive relief precluding Defendants from continuing to engage in such subject infringement and dilution.

190.     As a result of the foregoing, it is respectfully requested that this Court issue a judgment against Defendants and in favor of Plaintiffs in an amount to be determined at trial.

191.     As a result of the foregoing, it is respectfully requested that this Court issue an injunction against Defendants precluding them from engaging in the Subject Infringements and dilutions.

192.     Plaintiffs have no adequate remedy at law.

## COUNT IX

193.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 192 as if set forth at length herein.

194.     Upon information and belief, Defendant Geralynn Madonna has sought registration of the mark "DIGSMODA", having filed an "intent to use" application on or about April 17, 2012 as the purported owner of the mark (Exhibit "CC").

195.     At no time has Defendant Geralynn Madonna ever been the owner of the mark "DIGSMODA".

28

196.     At no time has Defendant Geralynn Madonna ever had any right or authority to register the mark "DIGSMODA."

197.     Pursuant to the Lantham Act §37, 15 USCA §1119, the Defendant Geralynn Madonna's application to file the Subject Mark must be cancelled and Defendant Geralynn Madonna must otherwise be precluded from registering the "DIGSMODA" mark.

198.     Plaintiffs do not have an adequate remedy at law.

## COUNT X

199.     Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 198 as if set forth at length herein.

200.     Defendant Geralynn Madonna falsely represented to the United States Patent and Trademark Office that she is the owner of the "DIGSMODA" mark.

201.     Defendant Geralynn Madonna knew this representation to be false at the time it was made.

202.     Defendant Geralynn Madonna made this false representation with the intention of deceiving the United States Patent and Trademark Office.

203.     The United States Patent and Trademark Office reasonably relied on this misrepresentation and process the application to register the "DIGSMODA" mark and issued a notice of allowance in or about November 2013.

204.     Plaintiffs was damaged as a proximate cause of the United States Patent and Trademark Office having relied on this misrepresentation.

205.     As a consequence thereof, Plaintiffs are entitled to an award of damages against Defendant Geralynn Madonna in an amount to be determined at trial.

206.     As a consequence thereof, it is respectfully requested that an award of monetary

damages be granted in favor of Plaintiffs against Defendant Geralynn Madonna in amount to be determined at trial.

207.      As a consequence thereof, it is respectfully request that this Court issue an order cancelling Defendant Geralynn Madonna's application and issue an order enjoining any registration of the "DIGSMODA" mark by Defendant Geralynn Madonna.

208.      Plaintiffs have no adequate remedy at law.

## COUNT XI

209.      Plaintiffs repeat each and every allegation set forth in paragraph 1 through 208 as if set forth at length herein.

210.      It is respectfully requested that this Court issue a judgment declaring that Defendants have no right to register the "DIGSMODA" mark.

211.      Plaintiffs have no adequate remedy at law.

## COUNT XII

212.      Plaintiffs repeat each and every allegation set forth in paragraphs 1 through 211 as if set forth at length herein.

213.      Defendants have benefitted financially by infringing on the Subject Marks.

214.      Plaintiffs have not received adequate compensation and/or other consideration for the provision of such investment.

215.      Equity and good conscious require restitution to Plaintiffs in an amount to be determined at trial.

216.      Defendants have been unjustly enriched.

217.      As a consequence thereof, Plaintiff are entitled to judgment against Defendants in

an amount to be determined at trial.

## COUNT XIII

218.     Plaintiffs repeat each and every allegation in paragraphs in paragraph 1 through 217 as if set forth at length herein.

219.     Plaintiffs respectfully requests that this Court issue a preliminary injunction followed by a permanent injunction against Defendants as follows:

     i.    Preliminarily enjoining and thereafter permanently enjoining Defendants, its agents, servant, officers, directors, affiliates, employees, subsidiaries and any one acting in concert with Defendants (including, without limitation, Yelp!, Yahoo!, Citysearch, and any other provider of Internet services on which Defendants or agents have posted and/or maintained the Subject Mark and/or any derivation thereof and/or on which appear any of the Subject Marks or any derivations thereof) from using the Subject Marks or any other name or mark confusingly similar to the Subject Marks, either alone or in combination with other words or symbols as part of any trademark, service mark, trade name, corporate name, assumed name, domain name, website name, email address in any way connected with Defendants' business and/or commercial activities.

    ii.    Preliminarily and thereafter permanently enjoining Defendants, its agents, servants, officers, directors, affiliates, employees, subsidiaries and any one acting in concert with Defendants from

holding themselves out to be in any way associated with Plaintiffs and/or any of the Subject Marks.

iii.   Pursuant to 15 USCA 1118, ordering that Defendants and all of those acting in concert with Defendants to deliver to Plaintiffs all documents, signs, advertising materials, and/or other items containing the Subject Marks and any derivations thereof, either alone or in combination with other words or symbols, that is published, even if not disseminated publically, for promoting Defendants' business or commercial activities.

iv.   Ordering that Defendants and all of those acting in concert with Defendants preliminarily and thereafter permanently remove from their website www.madonnaandco.com all references to the Subject Marks, and any derivations thereof, either alone or in combination with other words or symbols, including, without limitation, those which appear in the URL and on any webpage of the website www.madonnandco.com and any other website owned or controlled by any or all of the Defendants.

v.   Ordering that Defendants and all of this acting in concert with Defendants preliminarily and thereafter permanently remove from the Internet all references to the Subject Marks and any derivations thereof, either alone or other derivations thereof, which appear on any posting, URL, site, advertisement, listing, and/or weblink relating to Defendants and/or their product lines.

220.    As set forth above, Plaintiff stands a very strong likelihood of success on the merits. Indeed, the evidence of the Subject Infringements, Defendant's breach of the Membership Transfer Agreement, and other malfeasances committed by Defendants with respect to the Subject Marks is beyond dispute.

221.    Plaintiffs have and will continue to suffer irreparable harm as a result of Defendants' commission of the Subject Infringements, breach of the Membership Transfer Agreement, and other malfeasances as set forth herein.

222.    The balance of equities is clearly in favor of Plaintiffs as there can be no question that Plaintiffs will suffer more prejudice through the continued violation of their Subject Mark if injunctive relief is not granted than will Defendants if such relief is granted.

223.    Plaintiffs have no adequate remedy at law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment against Defendants as follows:

I.    Granting each of its claims for relief;

II.    Preliminarily enjoining and thereafter permanently enjoining Defendants, its agents, servant, officers, directors, affiliates, employees, subsidiaries and any one acting in concert with Defendants (including, without limitation, Yelp!, Yahoo!, Citysearch, and any other provider of Internet services on which Defendants or agents have posted and/or maintained the Subject Marks and/or any derivations thereof and/or on which appear any of the Subject Marks and/or any derivations thereof) from using the Subject Marks or any other name or mark confusingly similar to the

Subject Marks, either alone or in combination with other words or symbols as part of any trademark, service mark, trade name, corporate name, assumed name, domain name, website name, email address in any way connected with Defendants' business and/or commercial activities.

III.  Preliminarily and thereafter permanently enjoining Defendants, its agents, servants, officers, directors, affiliates, employees, subsidiaries and any one acting in concert with Defendants from holding themselves out to be in any way associated with Plaintiffs and/or any of the Subject Marks.

IV.  Pursuant to 15 USCA 1118, ordering that Defendants and all of those acting in concert with Defendants to deliver to Plaintiffs all documents, signs, advertising materials, and/or other items containing the Subject Marks and any derivations thereof, either alone or in combination with other words or symbols, that is published, even if not disseminated publically, for promoting Defendants' business or commercial activities.

V.  Ordering that Defendants and all of those acting in concert with Defendants preliminarily and thereafter permanently remove form their website www.madonnaandco.com all references to the Subject Marks, and any derivations thereof, either alone or in combination with other words or symbols, including, without limitation, those which appear in the URL and on any webpage of the website www.madonnandco.com and any other website owned or controlled by any or all of the Defendants.

VI.  Ordering that Defendants and all of this acting in concert

34

with Defendants preliminarily and thereafter permanently remove from the Internet all references to the Subject Marks and any derivations thereof, either alone or other derivations thereof, which appear on any posting, URL, site, advertisement, listing, and/or weblink relating to Defendants and/or their product lines.

VII.    Awarding damages (including treble damages), costs, and attorneys' fees to Plaintiffs on each of its claims in an amount to be determined at trial, including but not limited to damages pursuant to 15 USCA 1117(a).

VIII.    Awarding the recovery of Defendants' profits to Plaintiffs under 15 USCA 1117(a).

IX.    Declaring this case exceptional and awarding Plaintiffs its reasonable attorney's fees and the costs of this action under 15 USCA 1117(a).

X.    Awarding Plaintiffs with punitive damages against Defendants in an amount to be determined at trial.

XI.    For such further and Different relief that this Court deems just and proper.

Dated:    New York, New York
January 29, 2014

THE LAW OFFICES OF DANIEL A SINGER PLLC

By:_____

Daniel A. Singer (DAS 0978)
Attorneys for Plaintiffs
245 Fifth Avenue, Suite 1902
New York, New York 10016
(212) 569-7853

35