UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

DIGS NYC LLC, EVANTHIA a/k/a "EVA"          :
RAJWANS, and BHUPINDAR a/ka/a "BHINDA"  :
RAJWANS,                                                           :
                                                                          :
                                          Plaintiff,              :
                                                                          :          No. 14 Civ. 0538 (PAC)
                                                                          :
                    -against-                                      :
                                                                          :
G.M. MADONNA & CO., LLC f/k/a DIGS MODA :
GROUP, LLC f/k/a DIGS MODA LLC,                 :
MADONNA & CO., LLC f/k/a DIGS MODA       :
SOHO LLC, MADONNAANDCO.COM, LLC        :
f/k/a DIGS MODA.COM LLC, and GERALYNN  :
MADONNA,                                                        :
                                                                          :
                                          Defendants.        :

-------------------------------------------------------- x


**Defendants' Memorandum of Law
in Opposition to Plaintiffs' Motion for a Preliminary Injunction**


FINKELSTEIN PLATT LLP
11 Broadway, Suite 615
New York, New York 10004
(212) 422-7446

*Attorneys for Defendants*

# Table of Contents

**Page**

Table of Authorities ..................................................................................................iii

PRELIMINARY STATEMENT .................................................................................1

SUMMARY STATEMENT OF THE FACTS...................................................................3

ARGUMENT ..........................................................................................................5

I.     PLAINTIFFS FAIL TO SHOW THAT THEY WOULD SUFFER
       ANY IRREPARABLE HARM IN THE ABSENCE OF THE
       ISSUANCE OF A PRELIMINARY INJUNCTION ...............................................6

       A.     Plaintiffs' Delay in Commencing This Action and Further
              Delay in Filing Their Instant Application Negates Any
              Alleged Irreparable Harm ..............................................................6

       B.     Plaintiffs Fail to Allege That Defendants Are Currently
              Engaged in, or Likely to Engage in, Any Activity That
              Could Cause Them Irreparable Harm ...............................................9

II.    PLAINTIFFS FAIL TO SHOW THAT THEY ARE LIKELY
       TO PREVAIL ON THE MERITS OF ANY OF THEIR CLAIMS .........................10

       A.     Plaintiffs are Unlikely to Prevail on Their Trademark
              Infringement Claims .....................................................................10

              1.     Not All of Plaintiffs' Purported Marks are Valid
                     or Entitled to Protection ......................................................10

                     a.     Plaintiffs Have No Ownership Rights to
                            "DIGS Beaute".............................................................11

                     b.     Plaintiffs Have No Ownership Rights to
                            "DIGS"........................................................................12

                     c.     Plaintiffs have no Ownership Rights to
                            "DIGS Couture".............................................................13

          2.      Defendants Have Not Been and Are Not Using the Purported Marks Improperly, If At All, Including in Connection With the Sale or Advertising of Goods, Thereby Negating Any Likelihood of Confusion ...........................................................13

    B.     Plaintiffs are Unlikely to Succeed on Their Federal and State Dilution Claims ..............................................................................19

    C.     Plaintiffs are Unlikely to Succeed on the Remainder of Their Claims .............................................................................................21

III.    THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN DEFENDANTS' FAVOR AND THE PUBLIC INTEREST WOULD NOT BE SERVED IN ANY RESPECT BY THE ISSUANCE OF A PRELIMINARY INJUNCTION ................................................22

CONCLUSION....................................................................................................................23

## Table of Authorities

**Cases**                                                                                        **Pages**

1-800 Contacts, Inc. v. WhenU.Com, Inc.,
414 F.3d 400 (2d Cir. 2005)..............................................................................10

24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.,
447 F. Supp. 2d 266 (S.D.N.Y. 2006) ................................................................14

Am. Exp. Travel Related Servs. Co., Inc. v. MasterCard Int'l Inc.,
776 F. Supp. 787 (S.D.N.Y. 1991) .....................................................................10

Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.,
909 F. Supp. 896 (S.D.N.Y. 1995) .......................................................................8

Black & Decker Corp. v. Dunsford,
944 F. Supp. 220 (S.D.N.Y. 1996) .....................................................................13

Biosafe-One, Inc. v. Hawks,
524 F. Supp. 2d 452 (S.D.N.Y. 2007) ................................................................19

Bodrum USA, Inc. v. Palm Restaurant, Inc.,
No. 12 Civ. 6461 (KBF), 2012 WL 4857563 (S.D.N.Y. Oct. 10, 2012)..............21

Citibank, N.A. v. Citytrust and Citytrust Bancorp, Inc.,
756 F.2d 273 (2d Cir. 1985)..........................................................................6-7, 8

Comic Strip, Inc. v. Fox Television Stations, Inc.,
710 F. Supp. 976 (S.D.N.Y. 1989) .......................................................................9

eBay, Inc. v. MercExchange, L.L.C.,
547 U.S. 388, 126 S.Ct. 1837 (2006)................................................................4-5

Energy Intelligence Group, Inc. v. UBS Fin. Srvcs., Inc.,
No. 08 Civ. 1497 (DAB), 2009 WL 1490603 (S.D.N.Y. May 22, 2009).............20

Faiveley Trans. Malmo AB v. Wabtec Corp.,
559 F.3d 110 (2d Cir. 2009)..................................................................................6

Freedom Holdings, Inc. v. Spitzer,
408 F.3d 112 (2d Cir.2005)...................................................................................6

Gidatex, S.r.L. v. Campaniello Imports, Ltd.,
13 F. Supp. 2d 417 (S.D.N.Y. 1998) ....................................................................8

GMA Accessories, Inc. v. Croscill, Inc.,
No. 06 Civ. 6236 (GEL), 2008 WL 591803 (S.D.N.Y. Mar. 3, 2008) .................................20

GMA Accessories, Inc. v. Idea Nuova, Inc.,
157 F. Supp. 2d 234 (S.D.N.Y. 2000) ..................................................................................22

Golden Door, Inc. v. Odisho,
437 F. Supp. 956 (N.D. Cal. 1977) ......................................................................................15

Heller Inc. v. Design Within Reach, Inc.,
No. 09 Civ. 1909 (JGK), 2009 WL 2486054, at * 3 (S.D.N.Y. Aug. 14, 2009) ..................20

Interactive Products Corp. v. A2Z Mobile Office Solutions, Inc.,
326 F.3d 687 (6th Cir. 2003) ...............................................................................................16

Japan Telecom, Inc. v. Japan Telecom America Inc.,
287 F.3d 866 (9th Cir. 2002) ...............................................................................................15

Kassbaum v. Steppenwolf Productions, Inc.,
236 F.3d 487 (9th Cir. 2000) ...............................................................................................15

Kate Spade LLC v. Saturdays Surf LLC,
950 F. Supp. 2d 639, 643 (S.D.N.Y. 2013) ......................................................................12-13

Knight-McConnell v. Cummins,
No. 03 Civ. 5035 (NRB), 2004 WL 1713824 (S.D.N.Y. Jul. 29, 2004)............................16-17

Kuklachev v. Gelfman,
629 F. Supp. 2d 236 (E.D.N.Y. 2008) ...................................................................................10

Life Technologies Corp v. AB Sciex Pte. Ltd.,
No. 11 Civ. 325 (RJH), 2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011) ..................................8

Mazurek v. Armstrong,
520 U.S. 968, 117 S.Ct. 1865 (1997).....................................................................................5

Miss Universe, L.P., LLP v. Villegas,
672 F. Supp. 2d 575 (2009) ..................................................................................................19

Mobileye, Inc. v. Picitup Corp.,
928 F. Supp. 2d 759 (S.D.N.Y. 2013) ...................................................................................20

N. Atl. Operating Co., Inc. v. Evergreen Distributors, LLC,
No. 13 Civ. 4974 (ERK), 2013 WL 5603602 (E.D.N.Y. Sept. 27, 2013) ..............................9

Nora Beverages, Inc. v. Perrier Group of Am., Inc.,
269 F.3d 114 (2d Cir. 2001)................................................................................14

President Suspender Co. v. Macwilliam,
238 F. 159 (2d Cir. 1916).............................................................................14-15

Prestonettes, Inc. v. Coty,
264 U.S. 359, 44 S.Ct. 350 (1924)......................................................................15

Professional Golfers Asscn. of America v. Bankers Life & Cas. Co.,
514 F.2d 665 (5th Cir. 1975) ...............................................................................15

Reckitt Benckiser Inc. v. Motomco Ltd.,
760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011) .....................................................5, 6

Richard A. Leslie Co. v. Birdie, LLC,
No. 07 Civ. 5933(LAK), 2007 WL 4245847 (S.D.N.Y. Nov. 26, 2007) .............8

Rodriguez v. DeBuono,
175 F.3d 227, 234 (2d Cir. 1999)..........................................................................6

Salinger v. Colting,
607 F.3d 68, 79-80 (2d Cir. 2010) .....................................................................5-6

Silber v. Barbara's Bakery, Inc.,
950 F. Supp. 2d 432 (E.D.N.Y. 2013) ................................................................22

SMJ Group, Inc. v. 417 Lafayette Restaurant LLC,
No. 06 Civ. 1774 (GEL), 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006)........20, 21

Streetwise Maps, Inc. v. VanDam, Inc.,
159 F.3d 739 (2d Cir. 1998)................................................................................14

TCIP Holding Co., Inc. v. Haar Communications, Inc.,
244 F.3d 88 (2d Cir. 2001)..................................................................................19

Van Praagh v. Gratton,
No. 13 Civ. 375 (ADS), 2014 WL 292460 (E.D.N.Y. Jan. 28, 2014)................21

Winter v. Natural Res. Def. Council,
555 U.S. 7, 129 S.Ct. 365 (2008).........................................................................5

**Statutes**

15 U.S.C. § 1114........................................................................................................10

15 U.S.C. § 1125(a)(1)..............................................................................................10

15 U.S.C. § 1125(c)(2)(A).........................................................................................19

New York Business Law § 349 ..................................................................................21

**Miscellaneous**

3 McCarthy on Trademarks and Unfair Competition § 18:37 (4th ed. 2011) ........................14

Defendants G.M. Madonna & Co., LLC f/k/a DIGS Moda Group, LLC f/k/a DIGS Moda LLC (the "Company"); Madonna & Co., LLC f/k/a DIGS Moda Soho LLC; Madonnaandco.com LLC f/k/a DIGS Moda.com LLC, and Geralynn Madonna ("Geralynn"; collectively, "Defendants"), by and through their attorneys, Finkelstein Platt LLP, respectfully submit this Memorandum of Law in Opposition to the Motion of plaintiffs DIGS NYC LLC; Evanthia "Eva" Rajwans ("Eva"); and Bhupindar "Bhinda" Rajwans ("Bhinda"; collectively, "Plaintiffs") for a preliminary injunction.

## PRELIMINARY STATEMENT

Apparently feeling vindictive following their "business divorce" from Geralynn, Plaintiffs, under the guise of preserving the "status quo", come to this Court with unclean hands, seeking a preliminary injunction that would provide them now with all of the relief they seek in their Complaint.[1] Plaintiffs' motion is as lacking in merit as it is in good faith. Leaving aside the months' delay in filing their Complaint, Plaintiffs delayed an additional six weeks after filing their Complaint prior to making their instant motion. Plaintiffs did not even serve Defendants with the Summons and Complaint until serving them on Defendants' counsel on March 12, 2014, after they filed their instant motion. Indeed, they gave Defendants less than twenty-four hours notice (without providing a copy of the Complaint or their papers in support of their motion) that (a) they had commenced an action against Defendants, and (b) they would be making the instant motion.

Plaintiffs' lack of good faith notwithstanding, their application for a preliminary injunction fails, both as a matter of law and a matter of fact, as Plaintiffs are unable to meet any, let alone all, of the standards required for the issuance of a preliminary injunction. Indeed,

---

[1] Plaintiffs seek a preliminary injunction against Defendants and numerous third-parties, but apparently have not provided any notice to those third-parties, none of whom are represented by Defendants' counsel. For this reason alone, much of the relief Plaintiffs request should be denied.

Plaintiffs will unlikely be able to defeat a motion to dismiss. As set forth herein, Plaintiffs'
application should be denied in its entirety for the following reasons:

First, Plaintiffs delayed significantly in making this motion. Notwithstanding that
Plaintiffs apparently filed their Complaint on January 29, 2014, they waited six weeks to file this
motion. Worst, they waited four and a half months since they were aware of virtually all of the
allegations that gave rise to the Complaint and this motion before actually filing the motion. In
any event, Plaintiffs fail to allege in their Complaint or in connection with their motion that
Defendants are currently engaged in any activity that could cause them any injury, let alone
irreparable harm. Plaintiffs therefore cannot show that they would suffer any irreparable harm in
the absence of granting their motion. For this reason alone, their motion should be denied.  See
Point I, below.

Second, Plaintiffs cannot show that they are likely to prevail on any of their claims.
Some of Plaintiffs' claims for trademark infringement fail as a matter of law because Plaintiffs
do not own the marks they claim Defendants have infringed. See Point II.A.1, below. All of
Plaintiffs trademark infringement claims fail because Defendants have not used and are not using
any of the Purported Marks, or, if Defendants have used them, such use was to prevent any sort
of confusion in the minds of the public. See Point II.A.2, below. Plaintiffs' federal and state
claims for dilution fail as a matter of law because none of the Purported Marks are "famous", as
required by federal law, or "extremely strong", as required by New York law. See Point II.B,
below. Likewise, Plaintiffs are unlikely to succeed on the remainder of their state claims, most of
which fail as a matter of law. See Point II.C, below.

<u>Third</u>, in light of the facts and circumstances here, it is clear that the balance of the equities tips entirely in Defendants' favor and that there would be no public benefit to granting a preliminary injunction against Defendants. <u>See</u> Point III, below.

For all of these reasons, Plaintiffs' motion should be flatly denied.

## SUMMARY STATEMENT OF THE FACTS[2]

Having shopped for several years at Eva and Bhinda's boutique retail clothing store, DIGS, located in the Upper East Side, in or about 2011 Geralynn agreed to open, together with Eva and Bhinda, a similar store in Soho. <u>See</u> Geralynn Decl., ¶¶ 8, 13, 15-16. By written agreement dated as of September 6, 2011, Eva, Bhinda and Geralynn entered into an operating agreement for the Company (the "Operating Agreement") with respect to, among other things, the Soho location. Section 2.8 of the Operating Agreement provides, in part, as follows:

> Notwithstanding the aforementioned Trademarks and Domain Names License, it is expressly agreed and acknowledged by and among the Members and the Company that *any newly created Intellectual Property Rights in furtherance of the Company Business, whether a derivative work of the Trademarks and Domain Names or otherwise, shall be the sole property of the Company* unless otherwise set forth in a signed writing by and among the Members and the Company. *"Intellectual Property Rights" shall mean all property, intellectual, industrial design and moral rights of every kind and nature, including all applications thereof, including but not limited to patents, copyrights, trademarks, service marks, trade names, trade dress, symbols, logos and designs, trade secrets, and registrations, initial applications, renewals, extensions, continuations, divisions or reissues thereof.*

Exhibit D to the Affidavit of Eva Rajwans, sworn to on March 11, 2014, filed in support of Plaintiffs' motion ("Eva's Affidavit") (emphasis added). The Operating Agreement further provides that, as partial consideration for Eva's and Bhinda's membership units, Eva, Bhinda and DIGS granted a license to the Company to use the following trademarks: "DIGS", Royal DIGS", "Vintage DIGS", "DIGS Couture", and "DIGS Bijoux". Exhibit D to Eva's Affidavit, § 2.2.2.

---

[2] A fuller recitation of the facts is set forth in the accompanying Declaration of Geralynn Madonna, dated March 18, 2014 ("Geralynn Decl"), the Declaration of Christopher J. Platt, dated March 18, 2014 ("Platt Decl."), and the Declaration of Michael Straub, dated March 18, 2014 ("Straub Decl.").

After a tumultuous relationship and Geralynn's loss of more than half a million dollars due primarily to Eva's and Bhinda's breaches of the Operating Agreement, Eva and Bhinda agreed to transfer all of their ownership interests in the Company to Geralynn. See Geralynn Decl., ¶¶ 20-26. They therefore entered into a membership transfer agreement, effective as of September 23, 2013 (the "Membership Transfer Agreement"). See id., ¶ 26. Pursuant to Section 1.01.2.6 of the Membership Transfer Agreement, Eva and Bhinda agreed as follows:

> The Rajwans, individually or jointly, and any entity in which the Rajwans, individually or jointly, are members, shareholders, partners, or in which either or both have any interest, or any entity affiliated with any entity in which the Rajwans, individually or jointly, have an interest, including without limitation DIGS NYC LLC, shall not use the following names in any manner whatsoever, commercial or otherwise: *DIGS MODA GROUP, LLC; DIGS MODA GROUP; DIGS MODA SOHO LLC; DIGS MODA SOHO; DIGS MODA.COM LLC; and/or DIGS MODA.COM. It is expressly understood that each of these entities shall survive and be continued without dissolution to do business as the Company deems appropriate with all intellectual property rights and other rights in and to the same being retained by the Company, with only the agreement to cause a name change as set forth in section 1.03.2 below.*

Exhibit E to Eva's Affidavit (emphasis added.)

The Membership Transfer Agreement further provided that Geralynn could use, through October 30, 2013 (the "Transition Period"), certain marks set forth in the Membership Transfer Agreement and other purported marks, including "DIGS"; "Royal DIGS"; "DIGS Couture"; "Vintage DIGS"; "DIGS Bijoux"; and "DIGS Beaute" (together, the "Purported Marks"). See Geralynn Decl., ¶ 29; Eva's Affidavit, Exhibit E, § 1.02.2.2. During the Transition Period, Geralynn was also to effect a name change of the Company (which she did to Madonna & Co.) and change the domain name from www.digsmoda.com to www.madonnaandco.com (which she did). See Geralynn Decl., ¶ 38.

Notwithstanding that Defendants were permitted during the Transition Period (i.e., through October 30, 2013) to continue exercising their rights to the license to use the Purported

4

Marks, as early as October 7, 2013, Plaintiffs breached the Membership Transfer Agreement by, among other things, advising third-parties orally and in writing that, among other things, the Company's store was closed. <u>See</u> Geralynn Decl., ¶¶ 35-38.

During, and for a short time after, the Transition Period, in an effort to avoid any confusion, Defendants distinguished the new Madonna & Co. brand by identifying it as "formerly DIGS Soho" or "formerly DIGS Moda Soho". <u>See</u> Geralynn Decl., ¶¶ 70-72. Plaintiffs allege in their Complaint that Defendants have somehow infringed on the Purported Marks, somehow diluted the Purported Marks, somehow breached the Membership Transfer Agreement, and violated various New York State statutes. <u>See</u> Exhibit A attached to Eva's Affidavit. Plaintiffs' motion appears to make all of the same allegations, but includes a handful of additional exhibits, most of which pertain to the time period in November and December 2013. <u>See</u> <u>generally</u> Eva's Affidavit. None of the allegations in Plaintiffs' Complaint or their instant motion claim any sort of ongoing injury or imminent threat of injury to Plaintiffs. <u>Id.</u>

## ARGUMENT

"A preliminary injunction is an extraordinary remedy." <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7, 24, 129 S.Ct. 365, 376 (2008). "The party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied." <u>Reckitt Benckiser Inc. v. Motomco Ltd.</u>, 760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011) (quoting <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997)). Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of the injunction; (3) that the balance of hardships tips in the Plaintiffs' favor; and (4) that the public interest is not disserved by the issuance of the injunction. <u>See</u> <u>Salinger v. Colting</u>,

607 F.3d 68, 79-80 (2d Cir. 2010) (citing eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006)).

As set forth below, Plaintiffs are not entitled to a preliminary injunction because they have not shown, and cannot show, a likelihood of irreparable harm, a likelihood of success on the merits, that the balance of hardships tips in their favor, and that public interest would be served by the issuance of the injunction.

## I.    PLAINTIFFS FAIL TO SHOW THAT THEY WOULD SUFFER ANY IRREPARABLE HARM IN THE ABSENCE OF THE ISSUANCE OF A PRELIMINARY INJUNCTION.

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Trans. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999)). "Because of this, 'the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Reckitt, 760 F. Supp. 2d at 453) (quoting Rodriguez, 175 F.3d at 234). "If the movant fails to make a showing of irreparable harm, the motion for a preliminary injunction must fail." Id. "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir.2005) (quoting Rodriguez, 175 F.3d at 233-34).

### A.    Plaintiffs' Delay in Commencing This Action and Further Delay in Filing Their Instant Application Negates Any Alleged Irreparable Harm.

"Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement."

Citibank, N.A. v. Citytrust and Citytrust Bancorp, Inc., 756 F.2d 273, 276 (2d Cir. 1985) (preliminary injunction denied where Citibank did not seek it until ten weeks after it learned directly of defendant's alleged infringement).

Plaintiffs allege that they knew about the alleged infringement and other allegations set forth in the Complaint as early as October 31, 2013 -- the first day following the Transition Period. However, Plaintiffs delayed until January 29, 2014 to file their Complaint, in which they allege irreparable harm and that they are seeking a preliminary injunction. Although Plaintiffs substantively communicated once (through counsel) by letter dated November 18, 2013 with Defendants, to which Defendants fully responded by letter dated November 25, 2013, Plaintiffs failed to communicate any further with Defendants or otherwise advise Defendants of any further issues. See Platt Decl., ¶¶ 9-17.[3] Since filing their Complaint, Plaintiffs further delayed six weeks -- until March 12, 2014 -- to file their instant application for a temporary restraining order and preliminary injunction. See id.

In their motion, Plaintiffs repeat the allegations made in their November 18, 2013 letter, completely ignoring Defendants' November 25, 2013 responses, and add only a few new allegations not previously communicated to Defendants, notwithstanding that Plaintiffs apparently knew of them at least three months ago and as long as four and a half months ago. See, e.g., Eva's Affidavit, ¶¶ 56 (October 31, 2013 through January 30, 2014); 79, 11-12 (October 2013); 72-73, 75-77, 81, 83-89, 90-96, 101-07 (November 2013); and 60-63, 74, 99-100 (December 11, 2013). Indeed, Eva admits in paragraph 64 of her Affidavit that Defendants "have appeared not to have used the Subject Marks in it [sic] URL or to have listed Plaintiffs'

---

[3] As set forth in Defendants' November 25, 2013 response to Plaintiffs, Defendants would have been happy to cooperate with Plaintiffs' reasonable requests. Notwithstanding that offer, Defendants never heard again from Plaintiffs until March 11, 2014 when Plaintiffs' counsel notified them that Plaintiffs were making the instant motion, having filed (but not served) their Complaint on January 29, 2014. See Geralynn Dec., ¶ 5; Platt Decl., ¶ 17.

Trademarked lines on its "Collections" page" "since January 30, 2014". <u>See</u> Eva Aff., ¶ 64. If Plaintiffs were truly fearful of the risk of irreparable injury, they could have and should have made their application for injunctive relief months ago, or at least when they filed their Complaint six weeks earlier. Instead, they waited three and a half months after receiving Defendants' responses -- that noted that the vast majority of the issues raised were moot -- to regurgitate those claims in their motion.

     Given their delay, and that Plaintiffs are seeking in their instant motion all of the ultimate relief they seek in their Complaint, it seems clear that Plaintiffs are not seeking to preserve any sort of "status quo" pending resolution of this action. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." <u>Citibank</u>, 756 F,2d at 276. Indeed, "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." <u>Gidatex, S.r.L. v. Campaniello Imports, Ltd.</u>, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); <u>see</u> <u>also</u> <u>Life Technologies Corp v. AB Sciex Pte. Ltd.</u>, No. 11 Civ. 325 (RJH), 2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011) (preliminary injunction denied where plaintiffs delayed three months to make motion); <u>Richard A. Leslie Co. v. Birdie, LLC</u>, No. 07 Civ 5933(LAK), 2007 WL 4245847 (S.D.N.Y. Nov. 26, 2007) (same); <u>Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.</u>, 909 F. Supp. 896, 910 (S.D.N.Y. 1995) ("Because plaintiff was fully aware of the jeans for nearly four months and of the shirts for approximately three months before seeking this preliminary injunction, the delay is not explained by the need for further investigation. Despite the finding that defendants' pants and shirts are likely to cause confusion, plaintiff's lack of diligence militates against enjoining defendants from selling those items pending a prompt

trial."); <u>Comic Strip, Inc. v. Fox Television Stations, Inc.</u>, 710 F. Supp. 976 (S.D.N.Y. 1989) (preliminary injunction denied where plaintiff commenced action five months after learning of alleged infringement and three months since last communicating with defendant in settlement talks).

Accordingly, as a consequence of Plaintiffs' delay, to the extent that there is any basis to their claim of suffering irreparable harm (there is not), any such basis is negated by their own delays.  For this reason alone, Plaintiffs' application for a preliminary injunction should be denied.

      **B.**     **Plaintiffs Fail to Allege That Defendants Are Currently Engaged in, or Likely to Engage in, Any Activity That Could Cause Them Irreparable Harm.**

Even assuming, <u>arguendo</u>, that Plaintiffs' unexplained delay in making their application for a preliminary injunction could somehow be excused, Plaintiffs fail to allege that Defendants are continuously engaged in any of the alleged actions giving rise to Plaintiffs' claims. At best, Plaintiffs allege historical behavior by Defendants, the most recent of which occurred in mid-February 2014 but were previously observed by Plaintiffs months before. <u>See</u> Eva Aff., ¶ 66, 71. Nor do Plaintiffs even suggest that Defendants are likely to engage again in any of the alleged behavior. Indeed, as set forth in Geralynn's Declaration, Defendants have no desire to use any of the Purported Marks or to otherwise associate themselves with Plaintiffs, as any such association may dilute Defendants' brand. <u>See</u> Geralynn Decl., ¶¶ 2, 39, 47, 72, 78. <u>Cf.</u> <u>N. Atl. Operating Co., Inc. v. Evergreen Distributors, LLC</u>, No. 13 Civ. 4974 (ERK), 2013 WL 5603602 (E.D.N.Y. Sept. 27, 2013) ("the requirement of no adequate remedy at law is satisfied where the record contains no assurance against defendant's continued violation of trademarks"; quotation and citation omitted).  Accordingly, to the extent that Plaintiffs ever had a basis to pursue preliminary

injunctive relief, any such basis is now moot. See Am. Exp. Travel Related Servs. Co., Inc. v. MasterCard Int'l Inc., 776 F. Supp. 787, 790 (S.D.N.Y. 1991) ("A suit for injunctive relief is moot when the offending conduct ceases and the court finds that there is no reasonable expectation that it will resume"; citation and quotation omitted); see also Kuklachev v. Gelfman, 629 F. Supp. 2d 236 (E.D.N.Y. 2008) (same).

## II.   PLAINTIFFS FAIL TO SHOW THAT THEY ARE LIKELY TO PREVAIL ON THE MERITS OF ANY OF THEIR CLAIMS.

### A.   Plaintiffs are Unlikely to Prevail on Their Trademark Infringement Claims.

The Second Circuit has set forth the standards for relief for both registered and unregistered marks under the Lanham Act, 15 U.S.C. § 1114:

> In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114, or unregistered trademarks, pursuant to 15 U.S.C. § 1125(a)(1) a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) "in connection with the sale ... or advertising of goods or services," 15 U.S.C. § 1114(1)(a), (5) without the plaintiff's consent. In addition, the plaintiff must show that defendant's use of that mark "is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." 15 U.S.C. § 1125(a)(1)(A).

1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (footnote and citations omitted).

### 1.   Not All of Plaintiffs' Purported Marks are Valid or Entitled to Protection.

As set forth below, Plaintiffs have not, and cannot, establish that they have valid marks in "DIGS Beaute", "DIGS", and "DIGS Couture", and are therefore not entitled to protection under the Lanham Act with respect to those marks.[4]

---

[4] Plaintiffs apparently also seek a preliminary injunction enjoining Defendants from using the marks "DIGS Clean", "DIGS Luxury Beach", and "Glamorous DIGS", but they fail to allege anywhere that Defendants have ever used or have expressed any intention of using these marks.

        **a.**       **Plaintiffs Have No Ownership Rights to "DIGS Beaute".**

Pursuant to section 2.2.2 of the Operating Agreement entered into among Geralynn, Eva and Bhinda, Eva's and Bhinda's capitalization of the Company included, among other things, a license to use the following marks allegedly owned by Eva's and Bhinda's company, plaintiff DIGS NYC LLC:  "DIGS"; "Royal DIGS"; "Vintage DIGS"; "DIGS Couture"; and "DIGS Bijoux ("Trademarks and Domain Names License"). The Operating Agreement further provides in Section 2.8, in part, that any intellectual property further developed will belong to the Company (<u>i.e.</u>, defendant G.M. Madonna & Co., LLC f/k/a DIGS Moda Group, LLC f/k/a DIGS Moda LLC):

> Notwithstanding the aforementioned Trademarks and Domain Names License, it is expressly agreed and acknowledged by and among the Members and the Company that *any newly created Intellectual Property Rights in furtherance of the Company Business, whether a derivative work of the Trademarks and Domain Names or otherwise, shall be the sole property of the Company* unless otherwise set forth in a signed writing by and among the Members and the Company. *"Intellectual Property Rights" shall mean all property, intellectual, industrial design and moral rights of every kind and nature, including all applications thereof, including but not limited to patents, copyrights, trademarks, service marks, trade names, trade dress, symbols, logos and designs, trade secrets, and registrations, initial applications, renewals, extensions, continuations, divisions or reissues thereof.* (Emphasis added.)

Noticeably absent from the Trademarks and Domain Names License is "DIGS Beaute" because that mark had not yet been developed when the parties entered into the Operating Agreement. <u>See</u> Geralynn Decl., ¶¶ 30-3. When Plaintiffs filed an application for registration on February 16, 2012 of "DIGS Beaute", they stated that the mark was first used in commerce on October 15, 2011 -- five weeks after the September 6, 2011 effective date of the Operating Agreement. Therefore, pursuant to the express terms of the Operating Agreement, the "DIGS Beaute" mark is the sole property of the Company. Plaintiffs improperly failed to assign ownership of "DIGS Beaute" to the Company. <u>See</u> Geralynn Decl., ¶ 33.

Pursuant to Section 1.01.2.6 of the Membership Transfer Agreement, Eva and Bhinda agreed as follows:

> The Rajwans, individually or jointly, and any entity in which the Rajwans, individually or jointly, are members, shareholders, partners, or in which either or both have any interest, or any entity affiliated with any entity in which the Rajwans, individually or jointly, have an interest, including without limitation DIGS NYC LLC, shall not use the following names in any manner whatsoever, commercial or otherwise: *DIGS MODA GROUP, LLC; DIGS MODA GROUP; DIGS MODA SOHO LLC; DIGS MODA SOHO; DIGS MODA.COM LLC; and/or DIGS MODA.COM. It is expressly understood that each of these entities shall survive and be continued without dissolution to do business as the Company deems appropriate with all intellectual property rights and other rights in and to the same being retained by the Company, with only the agreement to cause a name change as set forth in section 1.03.2 below.* (Emphasis added.)

There does not appear to be any dispute that, since entering into the Membership Transfer Agreement, Geralynn is the sole member and owner of the Company. Accordingly, notwithstanding that Eva and Bhinda, through DIGS NYC LLC, obtained registration of "DIGS Beaute" with the United States Patent and Trademark Office, the Company is the rightful owner of "DIGS Beaute".

### b.      Plaintiffs Have No Ownership Rights to "DIGS".

According to the United States Patent and Trademark Office ("UPSTO") online trademark search, on December 4, 2013, Plaintiffs filed an application for registration of "DIGS".  On December 24, 2013, the USPTO issued an Office Action refusing registration on various grounds of likelihood of confusion with a mark, "Digz", registered by another party and a pending application for "DIGS Hawaii" by another party. See Platt Decl., Exh 5. To date, Plaintiffs appear not to have filed a response. See id. In light of this Office Action, Plaintiffs have no rights to the mark "DIGS". See Kate Spade LLC v. Saturdays Surf LLC, 950 F. Supp. 2d 639, 643 (S.D.N.Y. 2013) ("Standing alone, the word "Saturdays," while suggestive, is not as

strong as a suggestive mark would normally be, given that its frequent use in the apparel context makes it less distinctive.").

c.      **Plaintiffs have no Ownership Rights to "DIGS Couture".**

According to the USPTO online trademark search, Plaintiffs' application for registration of "DIGS Couture" was abandoned. <u>See</u> Platt Aff., Exh. 6. It appears that Plaintiffs abandoned this application because they received a similar Office Action as they recently received with respect to "DIGS" -- likelihood of confusion with "Digz", in addition to a prior pending application for "DIGGZ CLOTHING" by another party. <u>See id.</u> In any event, to the extent that "DIGS Couture" is descriptive, notwithstanding the self-serving, conclusory allegations in Eva's Affidavit and the Complaint, Plaintiffs have not shown, and are unlikely to be able to show, that "DIGS Couture" has acquired secondary meaning. <u>See</u>, <u>e.g.</u>, <u>Black & Decker Corp. v. Dunsford</u>, 944 F. Supp. 220 (S.D.N.Y. 1996) (no secondary meaning where plaintiffs fail to submit consumer studies or surveys or any proof showing secondary meaning).

Accordingly, Plaintiffs are unlikely to succeed on the merits with respect to their trademark infringement claims concerning the marks "DIGS Beaute", "DIGS", and "DIGS Couture" because Plaintiffs are not entitled to protection of those marks.

2.      **Defendants Have Not Been and Are Not Using the Purported Marks Improperly, If At All, Including in Connection With the Sale or Advertising of Goods, Thereby Negating Any Likelihood of Confusion.**

Notwithstanding Plaintiffs' self-serving, conclusory allegations (and apparent ignorance with respect to the basic workings of the Internet), for at least the following reasons, neither Geralynn nor any of the Defendants has improperly used any of the Purported Marks.

<u>First</u>, under the express terms of the Membership Transfer Agreement, Geralynn and the Company had an express license to use the Purported Marks through October 30, 2013 during

13

the Transition Period. Accordingly, any of Defendants' uses of the purported marks through and including October 30, 2013, including without limitation the October 23, 2013 email identifying Madonna & Co. as "formerly DIGS Soho" received by Estelle Siegel relied upon by Plaintiffs as the sole basis of actual confusion of the purported marks[5] (see Affidavit of Estelle Siegel, sworn to on March 11, 2014 submitted in connection with Plaintiffs' instant motion), were indisputably proper.

Second, during and after the Transition Period, any use of "DIGS Moda" or "DIGS Moda Soho" was and is proper under the express terms of Section 1.01.2.6 of the Membership Transfer Agreement. As set forth in Point II.A.1.a., above, the Membership Transfer Agreement expressly provides that the Company indisputably retained all intellectual property rights with respect to DIGS Moda Group, LLC; DIGS Moda Group; DIGS Moda Soho LLC; DIGS Moda Soho; DIGS Moda.com LLC; and DIGS Moda.com. Accordingly, Geralynn and the Company had, and continue to have, a contractual right to identify the Company as "formerly known as DIGS Moda" or "formerly known as DIGS Moda Soho". Indeed, the terms of the Membership Transfer Agreement in this regard are consistent with well-settled law: "When a business is sold as a going concern, trademarks and the good will of the business that they symbolize are presumed to pass with the sale of the business." 3 McCarthy on Trademarks and Unfair Competition § 18:37 (4th ed. 2011); see also President Suspender Co. v. Macwilliam, 238 F. 159, 162 (2d Cir. 1916)

---

[5] "Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2d Cir. 2001) (emphasis in original); see also 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC., 447 F. Supp. 2d 266, 278 (S.D.N.Y. 2006). Apart from stating in conclusory fashion that there is a likelihood of confusion, even assuming that the Defendants used the Purported Marks, Plaintiffs have, at best, alleged the *possibility* rather than the *probability* of confusion. See Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998) ("a probability of confusion, not a mere possibility, must exist"; "[a] probability of confusion may be found when a large number of purchasers likely will be confused as to the source of the goods in question").

("A sale of a business and of its good will carries with it the sale of the trade-mark used in connection with the business, although not expressly mentioned in the instrument of sale.").

In addition, Geralynn and the Company had and continue to have a legal right to identify the Company as "formerly known as DIGS Moda" or "formerly known as DIGS Moda Soho". See e.g., Kassbaum v. Steppenwolf Productions, Inc., 236 F.3d 487, 493 (9th Cir. 2000) ("the phrases 'Formerly of' …, immediately preceding the name 'Steppenwolf' in the promotional materials for World Classic Rockers greatly reduce the likelihood of confusion about the source of the band's music"); Golden Door, Inc. v. Odisho, 437 F. Supp. 956 (N.D. Cal. 1977) (defendant permitted to identify its "salons as 'formerly Golden Door for Hair' or 'formerly Golden Door Coiffeur', or in substantially similar fashion, for a period of twenty-four (24) months….")[6]; Professional Golfers Asscn. of America v. Bankers Life & Cas. Co., 514 F.2d 665 (5th Cir. 1975) (notwithstanding permanent injunction enjoining use of PGA mark, defendants not required "to dismantle any permanent appurtenances to the clubhouse" and "may denominate its club 'former home of the PGA' if it wishes"); Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 351 (1924) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth.  It is not taboo.").

Third, to the extent that Defendants used any of the purported marks in their domain name on the Internet, any such use was unintentional and merely a consequence of the domain name being changed from www.digsmoda.com to www.madonnaandco.com which required significant time and effort to delete any references to the Purported Marks.  See Geralyn Decl., ¶¶ 38, 80-82.

In any event, the only alleged active use on Defendants' website (see Eva's Affidavit,

---

[6] An unrelated holding of Golden Door concerning California claims for unfair competition and trade name violation was abrogated by Japan Telecom, Inc. v. Japan Telecom America Inc., 287 F.3d 866 (9th Cir. 2002).

¶56) was in a post-domain, meaning that the purported mark appeared *after* the ".com" of the domain name. See Geralynn Decl., ¶¶ 82-83. Use of another party's mark in a post-domain URL is not actionable. See Interactive Products Corp. v. A2Z Mobile Office Solutions, Inc., 326 F.3d 687 (6th Cir. 2003). In Interactive Products, the principals of the plaintiff ("IPC") and defendant ("A2Z") co-founded IPC for the purpose of manufacturing and selling portable computer stands. After a dispute, the principals entered into a settlement agreement whereby they agreed that the term, and all intellectual property rights to, "Lap Traveler" remained the exclusive property of IPC. A2Z then began manufacturing and selling a competing product called "The Mobile Desk". Notwithstanding the separation agreement, defendant's URL on its website to sell The Mobile Desk continued to include "laptraveler" in its post-domain. When "laptraveler" was searched on the Internet, the searches pulled up defendant's page selling the competing product, The Mobile Desk. Noting that A2Z did not insert "laptraveler" into the URL of its webpage but rather that it simply was never changed after the parties entered into the settlement agreement, the Sixth Circuit held as follows:

> The post-domain path of a URL … does not typically signify source. The post-domain path merely shows how the website's data is organized within the host computer's files…. Typically, web pages containing post-domain paths are not reached by entering the full URL into a browser; instead, these secondary pages are usually reached via a link from the website's homepage, which does not contain a post-domain path. For example, a consumer wanting to purchase a Lap Traveler product would probably no enter "a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm" [defendant's web site containing the alleged mark in post-domain] into a browser. The consumer would more likely enter "LapTraveler.com," which would bring the consumer to IPC's website, which sells the Lap Traveler. If a consumer were generally looking for portable computer stand products, the consumer might look at a general retailer's website, such as a2zsolutions.com. If the consumer were to go to a2zsolutions.com, the consumer would find a link entitled "The Mobile Desk Computer Stand," which if double-clicked would bring the consumer to a2Z's portable-computer-stand web page selling The Mobile Desk.

Interactive Products, 326 F.3d at 696-97 (internal citation omitted); see also Knight-McConnell v. Cummins, No. 03 Civ. 5035 (NRB), 2004 WL 1713824, at * 3 (S.D.N.Y. Jul. 29, 2004)

16

("defendant's use of the plaintiff's name in the post-domain path of a URL and placement of URL's using the plaintiff's name in the post-domain paths on chat forums, discussion boards, and search engines do not give rise to any source confusion").

Similarly, here, Defendants transitioned the former digsmoda.com website into madonnaandco.com. See Geralynn Decl., ¶ 38; Straub Decl., ¶ 4. In doing so, apparently one post-domain link, www.mandonnaandco.com/DIGS-Clothing, which was not accessible through madonnaandco.com but only through conducting Internet searches or by typing in the complete URL, was not immediately removed. See Geralynn Decl., ¶¶ 80-81; Straub Decl., ¶ 14-15. To the extent that any of the Purported Marks appeared on that webpage (see Eva Affidavit, ¶ 57), none of the marks were linked to any of the live pages on the madonnaandco.com webpage and no products could be purchased from that webpage. Id. In any event, Defendants were not selling and do not sell any products containing the Purported Marks.  See id., ¶ 2.

Similarly, to the extent that Plaintiffs complain that Defendants' website appears in searches for the Purported Marks (see, e.g., the self-serving and conclusory allegations of Eva's Affidavit, ¶¶ 68-71), such is likely because Defendants' website was formerly the website for the Company. See Geralynn Decl., ¶ 38; Straub Decl., ¶¶ 4-12. In any event, Defendants have removed all of the Purported Marks from the website's meta tags and other search words, including from Google AdWords. See Gerallyn Decl., ¶ 86, 88; Straub Decl., ¶¶ 16, 18, 19.

Fourth, particularly given that it appears that Plaintiffs have no rights to the mark "DIGS", see Point II.A.1.b., above, Plaintiffs' allegations concerning Defendants' posting on Facebook stating "Our New DIGS", see Eva Aff., ¶ 79, is completely without merit, particularly because Defendants' use of "DIGS" was clearly intended to mean a "home, place of residence", as Plaintiffs admit is one of the definitions of "Digs". Plaintiffs' Mem. at 4 n. 3. In any event, all

of the postings on Defendants' Facebook page appeared there only because it was the former

Facebook page of the Company. See Geralynn Decl., ¶ 40. Consistent with the Membership

Transfer Agreement with respect to maintaining the Company's webpage but changing the

domain name, Defendants similarly kept the Company's Facebook page but changed its name to

Madonna & Co. There was no obligation under the Membership Transfer Agreement to delete

the past history. In any event, as Eva admits in paragraph 81 of her Affidavit, due to her tortious

interference, Defendants' Facebook page no longer contains that history -- after Facebook had

denied Defendants access to the page for weeks. See Geralynn Decl., ¶¶ 40-48.

Fifth, likewise, with respect to Twitter, the Company maintained the Twitter account of

the Company and changed it to Madonna & Co. Therefore, there were necessarily historical

posts involving Plaintiffs which no longer appear. See Geralynn Decl, ¶ 49. Similarly, most of

the issues Plaintiffs complain about concerning Yahoo! are moot, and to the extent any historical

information referring to Plaintiffs or the Purported Marks appear on Defendants' Yahoo! listings,

Defendants have already requested that such information be removed. See id., ¶ 68.

Finally, and not just limited to Plaintiffs' trademark infringement claims, Plaintiffs'

allegations concerning the Allison Paul pseudonym and copying designs have absolutely nothing

to do with Defendants, even assuming that Plaintiffs design any of their own clothing (which

they do not). See Geralynn Decl, ¶¶ 69, 73-75.

For all the foregoing reasons, Plaintiffs have failed to show and cannot show that

Defendants have used or continue to use any of the Purported Marks, making it impossible for

Plaintiffs to show likelihood of confusion. Accordingly, it is unlikely that Plaintiffs will succeed

on the merits of their trademark infringement claims arising under the Lanham Act. It is also

clear that there are no questions going to the merits that would make the allegations set forth in

18

the Complaint a fair ground for litigation. For these reasons alone, Plaintiff's request for a preliminary injunction should be denied.

**B.      Plaintiffs are Unlikely to Succeed on Their Federal and State Dilution Claims.**

"Dilution is the loss of a trademark's ability to clearly identify one source." Miss Universe, L.P., LLP v. Villegas, 672 F. Supp. 2d 575 (2009) (defendant's use of "Miss Asia USA" does not blur plaintiff's "Miss USA" mark under federal or New York law). Here, any use by Defendants of the Purported Marks was historical in nature, due solely to the fact that the Company was formerly licensed to use, actually owns, or is otherwise permitted to use the Purported Marks. Accordingly, Plaintiffs cannot show that any alleged use by Defendants diluted the ability to identify the source of the Purported Marks. To the contrary, Defendants' Internet postings announcing that DIGS Moda Soho is now Madonna & Co. and use of "formerly known as" show that there can be no confusion as to the source of the Purported Marks.

In any event, although Plaintiffs appear to correctly quote 15 U.S.C. § 1125(c)(2)(A) with respect to the statutory standard of a "famous" mark, Plaintiffs fail to appreciate that the Purported Marks are far from famous and therefore not entitled to protection. It is well-settled in this Circuit that only marks approaching household names may (and not always) qualify as famous under the statutory standard. See Miss Universe, 672 F. Supp. 2d at 591 (noting that the statute's legislative history provides DuPont, Buick, and Kodak as examples of famous marks); TCIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88 (2d Cir. 2001) (holding, in denying motion for preliminary injunction, mark and name of store "The Children's Place" not famous); Biosafe-One, Inc. v. Hawks, 524 F. Supp. 2d 452 (S.D.N.Y. 2007) (no evidence presented that "Bio-Safe" famous where mark used only for five years, no evidence of reach of advertising or publicity being broad, and no evidence of amount, volume and extent of sales

19

under the mark to show recognition by U.S. public).

Indeed, "courts generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." Heller Inc. v. Design Within Reach, Inc., No. 09 Civ. 1909 (JGK), 2009 WL 2486054, at * 3 (S.D.N.Y. Aug. 14, 2009) (holding plaintiff's Bellini Chair not famous because known only to niche market of contemporary furniture, as plaintiff failed to include information about advertising budget or strength of consumer recognition); see also Mobileye, Inc. v. Picitup Corp., 928 F. Supp. 2d 759 (S.D.N.Y. 2013) (mark not famous where known only in car industry and has not acquired secondary meaning). "The policy rationale behind the fame requirement is to encourage and promote competition; without limiting the protection to famous marks, anti-dilution laws would turn every trademark into an anti-competitive weapon". Heller, 2009 WL 2486054 at *3 (citation and internal quotation omitted).

Although New York's anti-dilution statute does not require Plaintiffs' purported marks to be famous, they still must be "extremely strong". Mobileye, 928 F. Supp. 2d at 782 quoting Energy Intelligence Group, Inc. v. UBS Fin. Srvcs., Inc., No. 08 Civ. 1497 (DAB), 2009 WL 1490603 (S.D.N.Y. May 22, 2009); see also GMA Accessories, Inc. v. Croscill, Inc., No. 06 Civ. 6236 (GEL), 2008 WL 591803 (S.D.N.Y. Mar. 3, 2008) (no protection under New York law where mark not "extremely strong"). In addition, "a trademark's distinctiveness in a limited geographical or commercial area does not endow it with a secondary meaning for the public generally". See SMJ Group, Inc. v. 417 Lafayette Restaurant LLC, No. 06 Civ. 1774 (GEL), 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) (internal quotation and citation omitted) (noting that New York's dilution statute similarly lists Dupont, Buick, Schlitz, Kodak and Bulova as

examples of marks that merit protection from dilution).

Here, based on the allegations in both the Complaint and Eva's Affidavit, it appears exceptionally unlikely that Plaintiffs will succeed on the merits of their dilution claims, particularly because Plaintiffs cannot show that any of the Purported Marks are famous or remotely strong. Plaintiffs submit no evidence whatsoever in support of their self-serving, conclusory statements to the contrary. See SMJ Group, 439 F. Supp. 2d at 292 (plaintiffs' self-serving affidavit that marks are "widely recognized" does not rise to marks being famous or distinctive). Accordingly, Plaintiffs' motion for a preliminary injunction based upon their dilution claims should be denied because they are unlikely to prevail on these claims.

### C.   Plaintiffs are Unlikely to Succeed on the Remainder of Their Claims.

To the extent that Plaintiffs also seek preliminary injunctive relief based on their remaining claims, Plaintiffs are equally unlikely to succeed on those claims.

Plaintiffs' state claims of common law trademark infringement fail for the same reasons as their federal trademark infringement claims. Plaintiffs are unlikely to prevail on their claim for breach of the Membership Transfer Agreement. particularly because Plaintiffs breached that Agreement prior to the time that Defendants allegedly did so by advising third-parties during the Transition Period that the Company's Soho store was closed.

In addition, Plaintiffs are unlikely to prevail on their claims under New York Business Law § 349. See Bodrum USA, Inc. v. Palm Restaurant, Inc., No. 12 Civ. 6461 (KBF), 2012 WL 4857563 (S.D.N.Y. Oct. 10, 2012) (absent a specific and substantial injury to the public interest over and above ordinary trademark infringement, meaning potential danger to public health or safety, a claim under § 349 is not cognizable); Van Praagh v. Gratton, No. 13 Civ. 375 (ADS), 2014 WL 292460 (E.D.N.Y. Jan. 28, 2014) (same).

Likewise, Plaintiffs' claim to cancel Geralynn's application with the USPTO to register "DIGSMODA" fails because, apart from the fact that Geralynn properly filed the application on behalf of the Company prior to the execution of the Membership Transfer Agreement, she has not pursued the application, as Eva appears to admit in paragraph 135 of her Affidavit. See Geralynn Decl., ¶ 78. In any event, Plaintiffs' claim is not ripe, as a mark can only be cancelled after it has been registered. See GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F. Supp. 2d 234 (S.D.N.Y. 2000).

**III.   THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN DEFENDANTS' FAVOR AND THE PUBLIC INTEREST WOULD NOT BE SERVED IN ANY RESPECT BY THE ISSUANCE OF A PRELIMINARY INJUNCTION.**

Because Defendants have not used and have no intention of using the Purported Marks, see Geralynn Decl., ¶¶ 2, 39, 47, 72, 78 a preliminary injunction against them would be highly prejudicial, particularly because no public interest would be served in precluding them from doing something they have not done and affirm they will not do. Accordingly, there is no possibility of public deception. To the extent that Plaintiffs' claims are ultimately viable, they can seek monetary damages. See Silber v. Barbara's Bakery, Inc., 950 F. Supp. 2d 432, 444 (E.D.N.Y. 2013).

## CONCLUSION

For the reasons set forth above and in the accompanying Declarations of Geralynn Madonna, Christopher J. Platt, and Michael Straub, Defendants respectfully request that the Court deny in its entirety Plaintiffs' application for a preliminary injunction and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      March 18, 2014

Respectfully submitted,

FINKELSTEIN PLATT LLP

By:_____
      Robert F. Finkelstein
      rf@finkelsteinplatt.com
      Christopher J. Platt
      cp@finkelsteinplatt.com

11 Broadway, Suite 615
New York, New York 10004
(212) 422-7446

*Attorneys for Defendants*

23