**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------x
DIGS NYC LLC, EVANTHIA a/k/a "EVA" RAJWANS, and
BHUPINDAR a/k/a "BHINDA" RAJWANS

|  |  |
|---|---|
| Plaintiffs, | AFFIDAVIT OF EVANTHIA A/K/A EVA RAJWANS |
| -against- | |
| G.M. MADONNA & CO., LLC f/k/a DIGS MODA GROUP, LLC f/k/a DIGS MODA LLC, MADONNA & CO., LLC f/k/a DIGS MODA SOHO LLC, MADONNAANDCO.COM, LLC f/k/a DIGS MODA.COM LLC, and GERALYNN MADONNA | 14 CV 0538 (PAC) |

Defendants.
--------------------------------------------------------------------------------x
STATE OF NEW YORK          )
                           ) SS:
COUNTY OF NEW YORK         )

Evanthia a/k/a Eva Rajwans ("Plaintiff Eva"), being duly sworn, deposes and says:

1.  I am a plaintiff in this action ("Plaintiff Eva") and the Chief Executive Officer of plaintiff DIGS NYC LLC ("Plaintiff DIGS"). I am fully familiar with the facts herein. I respectfully submit this affidavit in support of Plaintiffs[1] motion brought by an order to show cause seeking inter alia preliminary injunctive relief along with a temporary restraining order.

2.  As set forth in the accompanying memorandum of law of my attorney Daniel A. Singer (the "Memorandum of Law"), Plaintiffs will be irreparably harmed if this application for preliminary injunctive relief along with a temporary restraining order is not granted in its entirety. As also set forth in the Memorandum of Law, this application should be granted as Plaintiffs' stand a substantial likelihood of success on the merits, Plaintiffs will suffer irreparable

---

[1] Hereinafter, the term "Plaintiffs" is defined to include Plaintiff Eva, Plaintiff DIGS, and plaintiff Bhupindar a/k/a "Bhinda" Rajwans ("Plaintiff Bhinda").

injury if the injunctive relief is not issued, the harm to Plaintiffs if injunctive relief is not

awarded greatly outweighs any possible harm to Defendants if such relief is awarded, and the

public interest will be served by the issuance of the injunction.

3.  A copy of Plaintiffs' complaint is annexed hereto as Exhibit "A" and incorporated herein

by reference[2].

## **FACTUAL BACKGROUND**

### **The Formation of the Digs Master Brand and the Related Product Lines**

4.  Plaintiff DIGS was formed on or about July 6, 2005.

5.  Plaintiff DIGS is a designer and retail purveyor of contemporary and luxurious yet

affordable clothing and fashion accessories for women.

6.  DIGS is an acronym for "Done In Great Style".

7.  Since on or about August 1, 2005, Plaintiffs DIGS has been doing business as "DIGS",

the name of its master brand (referred to alternatively herein as the "DIGS Master Brand", the

"DIGS Mark", or the "DIGS Brand").

8.  On or about July 2005, Plaintiff DIGS opened an office at 1466 Broadway, 5th

Floor, New York, New York.

9.  In or about November 2006, Plaintiff DIGS opened its first store at 1079 Third

Avenue, New York, New York.

10. In or about September 2010, Plaintiff DIGS moved across the street to 1054 Third

Avenue, New York, New York and has maintained its flagship store at that location since that

time (the "Real Digs Store" or the "Flagship Store").

---

[2] I have read Plaintiffs' complaint which has been filed in this action and I know the contents thereof.  The contents
of the Complaint are true to my knowledge, except as to those matters therein stated to be alleged upon information
and belief, and as to those matters believe them to be. By referencing the Complaint herein, I am verifying the terms
thereof consistent with the foregoing.

11. Plaintiff DIGS officially launched its e-commerce site in or about November 2007.

12. Plaintiff Bhupindar a/k/a Bhinda Rajwans ("Plaintiff Bhinda") is the Chief Operating Officer of Plaintiff DIGS.

13. Plaintiff DIGS offers various lines of clothing and accessories identified as follows: "Royal DIGS", a clothing line which commenced on or about November 11, 2006 (the "Royal DIGS Mark"); "DIGS Couture", a clothing line which commenced on or about January 1, 2011 (the "DIGS Couture Mark"); "Vintage DIGS", a clothing line which commenced on or about November 11, 2006 (the "Vintage DIGS Mark"); "DIGS Bijoux", a jewelry line which commenced on or about January 1, 2011 (the "DIGS Bijoux Mark"); "DIGS Clean", a clothing line which commenced on or about January 1, 2011 ("DIGS Clean Mark"); DIGS Beaute, a cosmetics line which commenced on or about October 15, 2011 (the "DIGS Beaute Mark"); and DIGS Luxury Beach, a clothing line which commenced on or about January 1, 2011 (the "DIGS Luxury Beach Mark") (collectively, the "Trademarked Lines").

14. The Vintage DIGS Mark was duly registered with the United States Patent and Trademark Office ("USPTO") on October 23, 2007 (See, Exhibit B).

15. The Royal DIGS Mark was duly registered with the USPTO on October 23, 2007 (See, Exhibit B).

16. The DIGS Bijoux Mark was duly registered with the USPTO on April 9, 2013 (See, Exhibit B).

17. The DIGS Beaute Mark was duly registered with the USPTO on April 9, 2013 (See, Exhibit B).

18. On December 14, 2013, an application to register the DIGS Mark was filed with the USPTO, citing a first use date of August 1, 2005. (See, Exhibit C).

19. Since their respective originate dates, Plaintiffs have actively and independently promoted the DIGS Master Brand and each of the respective Trademarked Lines (collectively, the "Subject Marks").

**Joint-Venture with Defendant Geralynne Madonna**

20. In or about April 2011, Plaintiffs were approached by Defendant Geralynn Madonna regarding establishing a joint-venture.

21. Defendant Geralynn Madonna was an avid customer of DIGS and an admirer of the DIGS Master Brand and its associated lines.

22. At the time, Defendant Geralynn Madonna represented that she was the Chief Executive Officer of the fashion catalogue known as Spiegel, Newport News, and Shape FX ("Spiegel").

23. Defendant advised Plaintiffs that she was voluntarily leaving the Spiegel out of desire to do something different.

24. Defendant Geralynn Madonna further represented to Plaintiffs that she had the contacts, expertise, and background to expand DIGS.

25. Indeed, the primary purpose of the proposed joint venture was to expand DIGS beyond the Flagship Store at 1054 Third Avenue, New York, New York.

26. Following discussions, Plaintiff Bhinda, Defendant Geralynne Madonna, and I formed the entity known originally as Defendant DIGS MODA LLC on or about September 6, 2011, thereafter changing its name to Defendant DIGS Moda Group LLC on or about September 8, 2011 (such entity is now known as Defendant G.M. Madonna & Co, LLC)[3].

---

[3] Defendant G.M. Madonna & Co., LLC f/k/a DIGS Moda Group, LLC f/k/a DIGSMODA LLC is hereinafter referred to alternatively as "Defendant G.M. Madonna LLC or "Defendant DIGS Moda Group, LLC" or "Defendant DIGSMODA LLC".

27.  Plaintiff Bhinda, Defendant Geralynn Madonna, and I executed  an operating agreement for Defendant DIGS Moda Group LLC which was effective as of September 6, 2011 (the "DIGS Moda Group LLC Operating Agreement", annexed hereto as Exhibit "D").

28. Pursuant to the DIGS Moda Group LLC Operating Agreement, Plaintiff Bhinda and I owned a joint 50% membership interest in Digs Moda Group LLC while Defendant Geralynn Madonna held the remaining 50% interest.

29. Pursuant to the DIGS Moda Group LLC Operating Agreement, DIGS Moda Group LLC was provided with a license to use what is acknowledged therein as  Plaintiffs' trademarks "DIGS", "Royal DIGS", "Vintage DIGS", "DIGS Couture" and "DIGS Bijoux" as well as what was acknowledged therein as being Plaintiff's domain names "GlamorousDIGS.com" and "Digsmoda.com" ("Plaintiffs' Intellectual Property License to DIGS Moda Group LLC").

30. In pertinent part, Plaintiffs' Intellectual Property License to DIGS Moda Group LLC was provided in consideration for Plaintiff Bhinda and I receiving our jointly held 50% membership interest in DIGS Moda Group LLC.

31. Section 2.2.2. of The Digs Moda Group LLC Operating Agreement set forth in pertinent part as follows with respect to Plaintiffs' Intellectual Property License to DIGS Moda Group LLC:

> As consideration for the Rajwan Membership Units, Digs NYC LLC, having full power and authority to license the Trademarks [defined therein to include "Digs", "Royal Digs", "Vintage Digs", hereby grants to the Company an irrevocable, exclusive, fully paid up, royalty free right to use the Trademarks and Domain Names for an initial period of five years from the Effective Date for any purpose in furtherance of the Company Business ("Trademark and Domain Name License") after which point the  irrevocable, exclusive, fully paid up, royalty-free Trademarks and Domain Names License shall become perpetual, *provided that* the Company does not dissolve, become insolvent or cease its business

operation before such date, in which case, the Trademark and
Domain Name License shall be immediately terminated and all
rights granted therein shall revert to DIGS NYC LLC.

(Exhibit "E" emphasis included)

32. The DIGS Moda Group LLC Operating Agreement clearly provided that Plaintiff DIGS
and any of its successors and assigns could continue to use the intellectual property subject to the
Intellectual Property License to DIGS Moda Group LLC at its Flagship Store. (Exhibit D,
Section 2.9)

33. On or about September 6, 2011, Plaintiff Bhinda, Defendant Geralynn Madonna, and I
formed Defendant DIGS Moda.com LLC[4] with Defendant DIGS Moda Group LLC as its sole
member.

34. On or about September 7, 2011, Plaintiff Bhinda, Defendant Geralynn Madonna, and I
formed Defendant DIGS Moda Soho LLC[5] with DIGS Moda Group LLC as its sole member.

35. In or about December 2011, Plaintiff Bhinda, Defendant Geralynn Madonna, and I
opened a store at 284 Lafayette Street, New York, New York 10012 which did business under
the name "DIGS Soho" (the "DIGS Soho Store").

36. The DIGS Soho Store was operated by Defendant DIGS Moda Soho LLC.

37. Following the opening of the DIGS Soho Store, it became abundantly clear to me
that, contrary to her representations to Plaintiffs, Defendant Geralynn Madonna did not have the
expertise, background, or contacts necessary to expand the DIGS Master Brand.

38. Following the opening of the DIGS Soho Store, I also learned that Defendant

---

[4] Defendant Madonnaandco, LLC f/k/a/ DIGS Moda.Com LLC is hereinafter referred to as "Defendant
Madonnaandco.com" or "Defendant DIGS Moda.Com LLC"
[5] Defendant Madonna & Co, LLC f/k/a DIGS Moda Soho LLC is hereinafter referred to alternatively as "Defendant
Madonna LLC" or "Defendant DIGS Moda Soho LLC").

Geralynn Madonna had lied about voluntarily leaving Spiegel and, in fact, had been forced to resign from Spiegel as a result of the fact that Spiegel's parent company Signatures Styles was in the process of filing for bankruptcy.

39. Indeed, if I had known that Defendant Geralynn Madonna was leaving Spiegel due to the economic conditions of Spiegel, Plaintiffs would not have participated in a joint venture with her.

40. Moreover, except for a single payment which was made in or about March 2012, Plaintiff Bhinda and I were not even paid the minimal monthly draw of $2000.00 which we were required to be paid pursuant paragraph 3.2 of DIGS Moda Group LLC Operating Agreement.

41. As a consequence thereof, Plaintiffs determined that it was time to terminate our relationship with Defendant Geralynn Madonna so that we could continue to maintain and develop the DIGS Master Brand and the various Trademarked Lines on our own.

42. Several months of negotiations culminated in the execution of the Membership Transfer Agreement on or about September 23, 2013, a copy which is annexed hereto as Exhibit "E".

43. The sum and substance of the Membership Transfer Agreement was that Plaintiffs' Intellectual Property License to DIGS Moda Group, LLC was terminated while Plaintiff Bhinda and I assigned all of our rights and interests in Defendant Digs Moda Group, LLC to Defendant Geralynn Madonna.

44. Section 1.02.2.1 of the Membership Transfer Agreement provides, in pertinent part, as follows:

The rights granted by and between the Company, DIGS NYC LLC, Geralynn and the Rajwans by Section 2.2.2 of the Operating Agreement shall be amended and modified as follows:

a) Notwithstanding anything in the Operating Agreement to the contrary, the Company's license to use the following trademarks shall terminate at the end of the "Transition Period" as such term is defined in Section 1.03: "DIGS", "Royal Digs", "Vintage Digs", "Digs Couture", and "Digs Bijoux". It is expressly understood and agreed among the parties that the Company may continue to use the aforementioned Trademarks at the Store operated by DIGS MODA SOHO LLC and through the Domain Name digsmoda.com until the end of the Transition Period (and as set forth in 1.02.2.6 and 1.03.2).

b) Notwithstanding anything in the Operating Agreement to the contrary, the Company's license to use the Domain Name GlamorousDigs.com shall terminate on the Effective Date [defined as being September 23, 2013].

(emphasis added).

45. Indeed, as set forth in Section 1.02.2.1(c) of the Membership Transfer Agreement, the only aspect of the Intellectual Property License retained by Defendant DIGS Moda Group, LLC was the right to use the domain name digsmoda.com but for the sole purpose of using it to re-direct traffic to its new website:

> Notwithstanding anything in the Operating Agreement to the contrary, (1) the Company's license to use the Domain Name digsmoda.com shall terminate at the end of the Transition Period as qualified below; and (2) the Rajwans, individually or jointly, and any entity in which the Rajwans, individually or jointly, are members, shareholders, partners, or in which either or both have any interest, or any entity affiliated with any entity in which the Rajwans, individually or jointly, are members shareholders, partners, or in which either or both have any interest, or any entity affiliated with any entity in which the Rajwans, individually or jointly, have an interest, including without limitation DIGS NYC LLC, shall not use the Domain Name digsmoda.com nor any other internet variation or top-level domain name that includes the word

8

'digsmoda' (for example and without limitation, 'digsmoda.net', 'digsmoda.org') or any combination of words that include both the words 'digs' and 'moda' for any purpose whatsoever, included but not limited to redirecting traffic to other sites. Notwithstanding this Section 1.02.2.1(c), the Company and/or Digs Moda.com LLC shall retain ownership and the right, title, and interest in the Domain Name digsmoda.com for the sole purpose of redirecting traffic from digsmoda.com to any new website and all other web related affiliates, placements, etc. operated by the Company and/or any entity in which Geralynn is a member, shareholder, or partner.

(Exhibit E, emphasis added).

46. With respect to the "Transition Period", the Membership Transfer Agreement provides, in pertinent part, as follows:

1.03: Transition Period. The time immediately following the Effective Date and running through and ending at the close of business of October 30, 2013 shall be the "Transition Period".

1.03.1 Notwithstanding anything in the Agreement to the contrary, during the Transition Period, the Company shall continue to have the right to use the Trademarks and the Domain Name digsmoda.com as set forth in the Operating Agreement. The Company may, however, at an earlier date of its choosing, commence operations under a new name, with the Transition Period as relating to the usage of the Trademarks and the Domain name digsmoda.com deemed to have ended upon such date (other than as set forth in 1.02.2.6 and 1.03.2). It is understood that at the end of the Transition Period the name "Digs" shall be removed from signage on the main door, the top window, flag, mat, projector image, hangers, and packaging .

1.03.02 Prior to the conclusion of the Transition Period, the Company shall change its name to any new name chosen by the Company by amending the Articles of Organization by the filing of the Certificate of Amendment with the New York State Department of State, Division of Corporations. The Company shall cause DIGS MODA SOHO LLC to the do the same. The Company (i.e. DIGS MODA GROUP, LLC) and DIGS MODA SOHO LLC shall be continued without dissolution, as this is a name change only. Further, DIGS MODA.COM LLC shall be continued without dissolution, and no name change is required.

9

(Exhibit E, emphasis added)

47.  Pursuant to the clear terms of the Membership Transfer Agreement, following the end of the Transition Period at the close of business on October 30, 2013, the Intellectual Property License to DIGS Moda Group LLC terminated and Defendants were precluded from using any of the Subject Marks or otherwise associating themselves with the DIGS Master Brand and any of the other Trademarked Lines (See, Exhibit E, Section 1.03)

48. The one narrowly tailored exception to this exclusion from the use of the Subject Marks was that Defendants were to be able to continue to use the domain name digsmoda.com but only for the sole purpose of redirecting traffic to its new website. In other words, if one were to type in the web address "digsmoda.com" they would be directed to a website which contained a name other than "DIGS" or some derivation or association therewith.

49. Indeed, the clear principal behind the Membership Transfer Agreement was a permanent disassociation between Defendants and the DIGS Master Brand and any other Trademarked Lines.

50. Despite the clear and unequivocal terms of the Membership Transfer Agreement, Defendants have continued to use the Subject Marks in order to obtain a commercial advantage over Plaintiffs.

**Defendants' Infringements**

51. Since the termination of the Transition Period, Defendants have engaged in a plethora actions which infringe upon the Subject Marks, described in detail below and referred to hereinafter as the "Subject Infringements."

Encoding of Defendants' URL with the Subject Marks and Embedding the Subject Marks in Defendants' Webpages

52. Consistent with the Membership Transfer Agreement, the Entity Defendants[6] legally changed their name with the New York Department of State so as to ensure that there was no longer any reference to any of the Subject Marks in such names. (Exhibit "F").

53. Since the termination of the transition period, Defendants have been operating an e-commerce business via the domain name "madonnaandco.com" ("Defendant's Post-Transition Domain Name" or "Defendants' Website")

54.  When Defendant's Post-Transition Domain Name appears in the search engine listings, it appears with the tag line which reads as follows "About Madonna & Co-Clothing-Collections-Dresses". (Exhibit "G").

55. Each of the hyphenated words in the tagline contains a hyperlink.

56. Following the termination of the Transition Period until at least January 30, 2014, upon "clicking" on the "Clothing" hyperlink, the user would be brought to a webpage identified by the following URL:

www.madonnandco.com/DIGS-Clothing. (Exhibit G)

57. Similarly, following the termination of the Transition Period until at least January 30, 2014,  upon clicking on the "Collections" hyperlink, the user would be brought to Defendants' Website, listing as the "Collections", Plaintiff DIGS' Trademarked Lines, including "Royal DIGS", "DIGS Couture", "Vintage DIGS", "DIGS Bijoux", "DIGS Clean", "DIGS Beaute", and "DIGS Luxury Beach". (Exhibit "G").

*The Impact of Defendants' Encoding their URL with the Subject Marks and Defendants' Embedding the Subject Marks in Their Webpages on Internet Searches*

58. Clearly, Defendants embedded the DIGS Mark in its URL and listed the Trademarked

---

[6] The term  Entity Defendants collectively refers to Defendant G.M. Madonna LLC, Defendant Madonna LLC, and Defendant Madonna.com.

Lines on its webpages in order to cause consumers who are conducting web searches for the DIGS Master Brand, the Trademarked Lines, and terms associated therewith to be directed to Defendants' Website.

59. As set forth in the examples below, such embedding of the DIGS Mark in Defendants' Website's URL and Defendants' listing of the Trademarked Lines on Defendants' webpages has caused Defendants' Website to appear ahead of (or, at the very least, in close proximity of) Plaintiffs' website www.digsny.com ("Plaintiff DIGS' Website") and/or other sites referencing the Flagship Store in Internet searches for the DIGS Master Brand, the Trademarked Lines, and/or terms associated therewith.

60. A search for the Trademarked Line "DIGS Beaute" on Yahoo! on December 11, 2013, for example, led to Defendants' Website appearing on the first page of the search results and ahead of the Plaintiff DIGS' Website www.digsny.com with the heading "Collections at Madonna & Co" (Exhibit "H"). Worse yet, the Trademarked Lines "DIGS Beaute" and "DIGS Luxury Beach" appeared directly below Defendant's Post-Transition Domain Name (Exhibit "H"). Worse still, upon "clicking" on Defendant's Post-Transition Domain Name, one was directed to Defendant's webpage containing a list of all of the Trademarked Lines. (Exhibit "H"). This search was repeated on multiple occasions between December 11, 2013 and January 29, 2014 and resulted in the same or similar results (see, by example, the search conducted on December 29, 2013, Exhibit I, hereto).

61. Similarly a search of the Trademarked Line DIGS Bijoux on December 11, 2013 on Google resulted in Defendants' Website appearing on the first page of Google, ahead of Plaintiff Digs' Website with the same heading- "Collections at Madonna & Co"- and identification of the Trademarked Lines in the underwriting (Exhibit J). Worse yet, clicking on the hyperlink directed

12

the user to Defendant's webpage www.madonnaandco.com/Collection/ on which was displayed

Plaintiffs' Trademarked Lines (Exhibit J). Worse yet, that webpage contained a link to

Defendants' collection of knits (Exhibit J).

62. Similarly, when a search for the term "royal digs clothing" was conducted on

December 11, 2013, Defendants' Website appeared on the first page, again ahead of Plaintiff's

Website (Exhibit "K"). Worse yet, Defendants' Website appeared in the search under the Pre-

Transition Domain Name www.digsmoda.com, which, as set forth in the accompanying

Memorandum of Law, is an express violation of the Membership Transfer Agreement. Upon

clicking on the hyperlink, one was directed to a webpage on Defendants' Website promoting

jackets (Exhibit "K").

63. Similarly, a search for the trademarked term "Digs Bijoux" on Yahoo! on December

11, 2013 resulted in the appearance on the Defendants' Website on the first page of the search

results with the weblink www.digsmoda.com/Swarovski-Crystal-Bracelet.html. Clicking on the

weblink brought the user to a webpage on Defendants' Website where Defendants' merchandise

(specifically a bracelet) was being offered for sale (Exhibit "L"). Again, as set forth in the

accompanying Memorandum of Law, Defendants were attempting to mislead the consumer by

wrongfully associating the Trademarked Lines with its product.

*Defendants' Continued Use of the Subject Marks in its Meta Tags and Source Codes and the
Impact on Internet Searches*

64. While since January 30, 2014, Defendants' at least at time have appeared not to have

used the Subject Marks in it URL or to have listed Plaintiffs' Trademarked lines on its

"Collections" page, Defendants have continued to use the Subject Marks in its meta tags and

source codes.

13

65. The result has been the appearance of a continued association between the Subject Marks in web searches.

66. For instance, since the termination of the Transition Period, when conducting searches on Google for terms commonly associated with the Digs Master Brand- such as, by mere example, "Digs Clothing", "digs clothing new york", "digs new york", "digs boutique", "Digs Store NYC", and "digs nyc"- Defendant's Website has typically appeared ahead of the Plaintiff Digs' website www.digsny.com ("Plaintiff Digs' Website") in the listing or, at the very least appearing in close proximity to Plaintiff's Website (Searched conducted on December 2, 2013; December 7, 2013; December 10, 2013; and February 13, 2014 are annexed hereto as Exhibit "M").

67. Similarly, when conducting searches under Google "Images" for terms commonly associated with the DIGS Master Brand such as "digs clothing", "digs boutique nyc", "digs store nyc", images relating to Defendants' Madonna Soho store appear either prior to or in close proximity to images relating to the Subject Marks (Searched conducted on December 7, 2013 and February 15, 2014 are annexed hereto respectively as Exhibit N).

*The Placement of Defendants' Google Adword Advertisements*

68. Defendants have an array of advertisements and postings on the Internet.

69. Such advertisements include, by mere example, paying for "Google AdWord" advertisements ("Defendants' Adword Advertisements").

70. Plaintiff DIGS also pays for Google Adword Advertisements ("Plaintiff's Adword Advertisments").

71. Because of the embedding of the DIGS Mark in Defendants' URL, the listing of the Trademarked Lines on it webpages, Defendants' use of the Subject Marks in its meta tags and source codes, and other infringing associations with the Subject Marks, searches relating to the

Subject Marks result in the appearance of Defendants' Adword Advertisements ahead of and/or

in close proximity of Plaintiff's Adword Advertisements in the search results and, at times, even

appearing at the exclusion of Plaintiff's Adword Advertisements. By mere example, searches

conducted on December 7, 2013 and February 14, 2014 of these are annexed, respectively,

hereto as   Exhibit "O".

<u>Defendants' Violative and Deceptive Third Party Postings</u>

72. Defendants have placed postings on websites throughout the Internet depicting false and

misleading associations between its store name, on the one hand, and the Digs Masterbrand and

Trademarked Lines, on the other. This has included, by mere example and without limitation,

including discussions of the DIGS Masterbrand and/or Trademarked Lines in postings regarding

Defendants' Soho Store; referring to the Soho Store as "DIGS"; including the DIGS logo in

postings regarding Defendants' Madonna Soho Store; and/or referring to the Madonna Soho

Store as "formerly DIGS Moda Soho" or "formerly DIGS, Soho" or implying some other current

or former association with the Digs Master Brand in its postings. (Exhibit "P")

73. By illustration,  the listing for the Madonna Soho Store on Yahoo! has been found to

include a slideshow featuring  products from the DIGS Master Brand and Trademarked Lines

(Exhibit "Q"). Moreover,  Defendants' listing on Yahoo! has been found to refer to the Soho

Store as "Formely Digs Moda Soho" or "Formerly Digs, Soho" so as to unlawfully associate

their store and brand with the Subject Marks and infringe thereon in order to deceive the public

and obtain a commercial advantage over Plaintiffs. (Exhibit "Q").

74. Defendants have also been selling merchandise on third party sites, referencing such

15

merchandise as being part of the Trademarked Lines. By example, Defendants have been selling their tank tops and pants on the website www.shoptiques.com falsely stating that such clothing is part of the Royal DIGS Trade Marked Line. (Exhibit "R").

75. Similarly, Defendants posted their merchandise on the website www.snapette.com, falsely stating that it was part of the DIGS Master Brand and the DIGS Couture Trademarked Line at "DIGS, SOHO."  (Exhibit "S"). The infringing references were removed from www.snapette.com after Plaintiffs sent a cease and desist letter to the site webmaster.

76. Defendant has also infringed upon the Subject  Marks through its posting on newyork.citysearch.com. While Defendants have posted under the new name of their store "Madonna & Co", they have continued to use reviews containing references to the Soho Store as "Digs, Soho", thus creating confusion for the consumer (See, Exhibit T).

77. Another example of Defendants' infringements is associating their business with DIGS on the website www.whitepages.com (See, Exhibit "U", Searches conducted on November 22, 2014 and February 13, 2014, respectively).

*Defendants' Violative Postings on Facebook*

78. Defendants' postings on Facebook have been particularly egregious.

79. First, on October 31, 2013, immediately following the termination of the Transition Period, Defendants issued a posting stating "Our New DIGS" on its Facebook page ("Defendants' Facebook Page") clearly misleading the public into believing that the Madonna Soho Store continued to be linked to the DIGS Master Brands (See, Exhibit "V").

80. Moreover, following the termination of the Transition Period, Defendants created

and/or continued to maintain a plethora of links to the DIGS Master Brand merchandise, merchandise pertaining to the Trademarked Lines, as well as references to the Subject Marks in general (Exhibit W).

81. On at least three (3) occasions, I corresponded with Facebook to have the violative links removed and on each such occasion Facebook complied, with Defendants merely reposting such links following their removal.

82. It is my understanding that Defendants have now been precluded by Facebook from reposting such links.

*Defendant's Violative Postings on Yelp*

83. Following the Transition Period, Defendants have been posting their store on Yelp! as "Digs Moda" in complete violation of the Membership Transfer Agreement (Exhibit "X")

84. Further infringing on the Subject Marks, Defendants describe their store as being a continuation of the DIGS Master Brand: "We opened in Soho at 284 Lafayette Street in December 2011 as DIGS Moda Soho. We recently changed our name to Madonna & CO. and have added many new exciting lines, and one a kind vintage" (Exhibit X, emphasis added).

85. As set forth in the accompanying Memorandum of Law, the mere reference to "DIGS" constitutes an infringement of the Subject Marks as well as a violation of the Membership Transfer Agreement.

86. Moreover, by erroneously stating that it has "added many new exciting lines" (clearly implying that the DIGS Masterbrand and Trademarked Lines are still available at the Madonna Soho Store), Defendants are confusing the public in erroneously attempting to make them believe that the Madonna Soho Store continues to be a "DIGS" operation.

87. I communicated with Yelp on several occasions regarding these violations.

88. Initially, Yelp listed the Soho Store as being "closed" and thereafter listed it as having been "renovated" on or about November 12, 2013, changing the status again to closed on or about November 16, 2013 and then finally listing it again as having been "renovated" on or about December 10, 2013 (Exhibit "X").

89. Yelp has not removed the violative language (Exhibit X) from its listing and appears to be refusing to do so absent judicial intervention.

*Defendant's Google Listings*

90. Following the Transition Period, Defendants listed itself on Google as "DIGS SOHO" in clear violation of the Membership Transfer Agreement and a clear infringement on the Subject Marks. (the "DIGS SOHO Listing", Exhibit Y)

91. Indeed, the address, phone number, and hours of the Madonna Soho Store were all listed under the DIGS SOHO Listing in a clear attempt to confuse the consumer into believing that the Madonna Soho Store continued to be part of the DIGS Master Brand (Exhibit Y).

92. Worse yet, the DIGS SOHO Listing often appeared with links to other sites, such as merchantcircle.com, which contain information relating to Defendants.

93. Indeed, clicking on the hyperlink on the DIGS SOHO Listing would bring the user to the Defendants' listing on merchantcircle.com, again falsely representing that Defendants' are somehow associated with the DIGS Master Brand.

94. On or about November 7, 2013, I advised Google of the Subject Infringements resulting in Google listing Digs Soho as being "closed or relocated." (Exhibit Y)

95. The DIGS SOHO Listing was posted again by Defendants on November 21, 2013 and thereafter, again subsequently removed by Google (Exhibit Y[7]).

---

[7] The November 21, 2013 screenshot contains typewritten markings that I inserted for illustrative purposes.

96. On or about November 27, 2013, after being posted again by Defendants for at least the third time was marked by Google being permanently closed (Exhibit Y).

97. Causing further confusion for consumers, Defendants also created a "google page" following the Transition Period containing icons pertaining to both Plaintiffs and Defendants (Exhibit Z).

*Defendants' Infringing Twitter Postings*

98. Defendants maintain a twitter Account identified as https://twitter.com/madonnaandco ("Defendants' Twitter Account").

99. Following the Transition Period, Defendants have posted and/or have caused postings to be rendered and/or have maintained posting on their Twitter Account which associate Defendants with the DIGS Master Brand.

100.    By mere example, a screenshot of the Twitter Account taken on December 29, 2013 show a Twitter posting regarding an interview with me (Exhibit "AA"). As set forth in the accompanying memorandum of law, by posting and/or maintaining Twitter posting that associated Defendants with the DIGS Master Brand, Defendants are creating confusion among the public.

*Defendants' Infringing Yahoo! Postings*

101.    Following the transition period, Defendants posted and/or maintained a listing on Yahoo! for "DIGS", identifying it as the "DIGS flagship store" and providing the address of the Madonna Soho Store as well as identifying it with the domain name digsmoda.com (Exhibit "BB")

102.    Following the Transition Period, a search on Yahoo! for the term "digs" would generate a listing for the Madonna Soho Store, identifying it as DIGS (Exhibit "BB").

103.   Following the Transition Period, Defendants altered the listing on Yahoo! so as to set forth the hours of the Madonna Soho Store as being "open until 8 pm." Indeed, clicking on the "info" hyperlink would bring the user to a page containing a more detailed listing (Exhibit "BB").

104.   At no time following the Transition Period did Defendants change, alter, or otherwise correct the subject listing so as to eliminate any reference to "DIGS" and/or "digsmoda.com" as required by the Membership Transfer Agreement.

105.   As set forth in the accompanying Memorandum of Law, the subject Yahoo! listing were clearly causing confusion in the minds of consumers by erroneously associating the Digs Master Brand with Plaintiff.

106.   Following the Transition Period,  I communicated with Yahoo! regarding the subject infringement resulting in the removal of the subject Yahoo! listing.

*Infringement Via the Allyson Paul Pseudonym*

107.   Defendants are placing postings on third party sites under the pseudonym Allyson Paul.

108.   Such postings purport to establish a relationship between the Digs Master Brand and the Madonna Soho Store.

109.   Such postings have appeared on a variety of third party sites including, by mere example, "plus.google.com", "alibaba.com", "pinteinterest.com" (See, Exhibit CC).

110.   As set forth in the accompanying Memorandum of Law, such postings have been set forth in order to confuse the public into erroneously believing that there continues to be a relationship between Defendants and the DIGS Master Brand. As further set forth in the

accompanying Memorandum of Law, such postings infringe upon the Subject Marks and are in violation of the Membership Transfer Agreement.

Defendants' Infringing Email Communication

111.   Defendants have been forwarding email communication to Plaintiffs' clients identifying the Madonna Soho Store as being "formerly DIGs Soho". (Exhibit "DD")

112.   As set forth in the accompanying Memorandum of Law, Defendants' use of the term "formerly DIGS Soho" in association with the Madonna Soho Store constitutes an infringement of the Subject Marks and a violation of the Membership Transfer Agreement.

113.   Indeed, as set forth in the accompanying Memorandum of Law, Defendants have set forth such emails in order to confuse consumers and misappropriate commercial opportunities from Plaintiffs.

The Copying of Plaintiffs' Designs

114.   Since the commencement of this action, it has become apparent that Defendants have expanded the nature of its infringing activities and are now copying Plaintiffs' designs (Exhibit "EE")

115.   As set forth in the accompanying Memorandum of Law, Defendants' malfeasant conduct is causing a high likelihood of confusion in the minds of the public as it is leading consumers to wrongfully conclude that Defendants are purveyors of the DIGS Master Brand and the Trade Marked Lines.

116.   Clearly, Defendants are engaging is such conduct so as to capitalize on the commercial value of the DIGS Master Brand and the Trademark Lines to the extreme detriment of Plaintiffs.

117.   As set forth in the accompanying Memorandum of Law, Defendants' conduct not

only constitutes an infringement of the Subject Marks but also constitutes a clear breach of the Membership Transfer Agreement.

118.    On or about November 18, 2013, Plaintiffs corresponded  with Defendants demanding that they cease and desist from engaging in the aforementioned infringing conduct as well as to render payments to Plaintiffs as a result of the damages caused by such conduct. (Exhibit FF).

119.    Defendants failed to comply with Plaintiff's demands thus necessitating this application.

120.    As a result of the foregoing, it is respectfully requested that Plaintiffs' application for injunctive relief be granted in all respects.

## PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED

121.    As set forth in the accompanying Memorandum of Law, Plaintiffs easily fulfill the requirements for the granting of injunctive relief including a likelihood of success on the merits, an incurrence of irreparable harm if injunctive relief is not granted, and a balance of equities in Plaintiffs' favor[8].

### Plaintiffs Have A High Likelihood of Succeeding On the Merits of This Action

Defendants Are Clearly Liable For Trademark Infringement

122.    As set forth in the Memorandum of Law, Defendants have clearly violated the Subject Marks both pursuant to the Latham Act and under New York Common Law.

123.    As set forth in the Memorandum of Law, there can be no dispute that the Subject

---

[8] The legal arguments for the granting of this application are set forth in full detail in the Memorandum of Law. This affidavit recites facts relating to the arguments set forth in the Memorandum of Law but is by no means contains a complete recital of the legal arguments, nor is it otherwise a substitute for the Memorandum of Law.

Marks are entitled to protection as they are distinctive, falling into the category of "arbitrary". The Subject Marks have also achieved a secondary meaning in the marketplace as consumers clearly associating them with the DIGS Brand and its products at the exclusion of other brands. As also set forth in the Memorandum of Law, as Defendants have continued to use the Subject Marks following the termination of the Intellectual Property License to Digs Moda Group LLC, a likelihood of confusion is established as a matter of law and hence trademark infringement has been established as a matter of law. Indeed, no "bright line" test is required to determine infringement in this situation as it is so clearly apparent.

124.    Regardless, as set forth in the Memorandum of Law, the factors generally examined in evaluating infringement are clearly met here. Indeed, we are not dealing here with "similar" marks but rather Defendants' continued of the same marks- the Subject Marks which clearly belong to Plaintiffs- following the termination of the Transition Period. Moreover, both Plaintiffs' brand Defendants' brand are in close proximity to one another. Both Plaintiffs and Defendants are in the clothing business and sell fashionable yet affordable clothing to young to middle-aged women. Plaintiffs' and Defendants' respective stores are located in Manhattan in close proximity to one another, with Plaintiffs' DIGS Flagship Store being located on the Upper East Side and Defendants' Madonna Soho Store being located in Soho. Both Plaintiffs and Defendants promote and advertise their respective brands on the Internet.

125.    Moreover, there has been actual confusion caused among customers of the DIGS Brand as a result of Defendants continued association with the Subject Marks. Indeed, on or about October 23, 2013, Defendants forwarded an email to Plaintiff DIGS' customers identifying the Madonna Soho Store as "formerly DIGS Soho" (Exhibit "DD"). One of those customers-

Estelle Siegel- forwarded the email to me and inquired whether the DIGS Brand was now known as Madonna & Co (See, the accompanying affidavit of Estelle Siegel)!

126.    As set forth in the Memorandum of Law, even more critical than evidence of actual confusion is the strong likelihood of confusion. As set forth above, Defendants have undertaken a variety of actions so as to create a false appearance of a continued association between Defendants, on the one hand, and the DIGS Master Brand and the Trademarked Lines, on the other which undoubtedly will create confusion among consumers.

127.    It is also clear the Defendants have been proceeding in bad faith. Defendants have placed postings on websites throughout the Internet depicting false and misleading associations between its store name, on the one hand, and the Digs Masterbrand and Trademarked Lines, on the other. Defendants are clearly doing this in order to profit from the DIGS Brand's reputation.

128.    Moreover, the quality of the DIGS Brand products are clearly superior. Indeed, Defendants' products are cheaply made without the attention to detail which is used in making Plaintiffs' products.

129.    Moreover, the consumers who purchase the DIGS Brand products are not particularly sophisticated and are highly likely to be confused by Defendants' continued association with our brand.

Defendants Are Clearly Diluting the Subject Marks both Pursuant to Federal and New York State Law

130.    As set forth in the Memorandum of Law, one criteria examined under the Latham Act is whether the Subject Marks are famous. The DIGS Master Brand has been in existence since in or about August 2005 and the Subject Marks have been advertised and promoted online through Plaintiffs' website, third party sites, and paid advertising. As a result of their position on the

Internet the Subject Marks have been able to reach a national and even global audience. While DIGS Flagship Store is in Manhattan, for most of its existence Plaintiff DIGS has also done a steady volume of Internet based sales selling to customers across the country. Indeed, the Subject Marks are widely recognized with consumers associating the Subject Marks with the DIGS Brand.

131.   As set forth in the Memorandum of Law, the present situation constitutes a classic example of "dilution by blurring". As set forth above and in the Memorandum of Law, Defendants' predatory intent is clear. Moreover, in addition to being distinctive and being the actual (not just similar to) the marks used by Defendants, other than with respect to Defendants' infringements, the Subjects Marks are being used exclusively by Plaintiffs.

132.   As set forth in the accompanying Memorandum of Law, under New York Trademark Dilution it is not necessary for the Subject Marks to be "famous"; it is sufficient if they are merely renowned. While the Subject Marks are clearly famous, they even more easily make the status of being "renowned" given their high degree of recognition in both New York City and nationwide.

Defendant Breach of the Membership Transfer Agreement

133.   As set forth above and in the Memorandum of Law, Defendants have clearly breached the Membership Transfer Agreement by continuing to use the Subject Marks.

Defendants Violation of New York General Business Law Section 349

134.   As set forth in the Memorandum of Law, New York General Business Law Section 349 precludes businesses from engaging in deceptive acts. As set forth in the Memorandum of Law, Defendants' have clearly violated this statute. Indeed, Defendants' malfeasant actions include, among other things, the creation and maintenance of online postings which falsely

associate the DIGS clothing brand name with Defendants' brand. Clearly, Defendants' actions are both consumer-oriented and misleading in a material way. Moreover, as set forth in more detail below, Plaintiffs are being irreparably harmed as a result of Defendants' actions including loss of goodwill, control over their reputation, and a dilution of the Subject Marks.

Defendant Geralynn Madonna Has No Right to Register the "DIGSMODA" Mark

135.    Defendant Geralynn Madonna has attempted to register the "DIGSMODA" by filing an "intent to use" on or about April 17, 2012 as the purported owner of the mark. Publication has occurred and a notice of allowance was issued on November 5, 2013 regarding filing a Statement of Use (See, Exhibit "GG"). At no time has Defendant Geralynn Madonna ever been the owner of the mark "DIGSMODA". As is clear from the application itself, Defendant Geralynn Madonna misrepresented to the United States Patent and Trademark Office that she was the owner of the mark when in fact she was not (Exhibit "GG"). Defendant Geralynn Madonna clearly made these false representations in order to deceive the USPTO and, in fact, did deceive the USPTO as the mark was published and is simply waiting Defendant Geralynn Madonna to file a statement of use.

**PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THEIR APPLICATION FOR A TEMPORARY STAY AND PRELIMINARY INJUNCTIVE RELIEF IS NOT GRANTED IN THE ENTIRETY**

136.    As set forth in the Memorandum of Law, it is well settled that loss of control over One's reputation constitutes irreparable harm in a trademark infringement case. Here, Plaintiffs have invested substantial time, energy, and money in developing the DIGS Master Brand and the Trademarked Lines. Indeed, since the inception of the DIGS Master Brand in 2005, the fostering of the brand through Plaintiff DIGS has been the primary occupation of both my husband Plaintiff Bhinda and myself. We have worked tireless to develop the DIGS Brand and fostering

26

goodwill both in the New York City community as well as nationwide through online promotions and sales. We have invested countless hours and over $500,000.00 in developing the DIGS Master Brand and the Subject Marks. Defendants' multiple infringements puts that good will at risk by limiting Plaintiff's ability to control its brand.

137.    Since November 2013, the sales of Plaintiff DIGS has declined by between 30-50% as a result of Defendants' Infringements. Plaintiffs have also held off on opening their new ecommerce site out of concerns that it will be negatively impacted by Defendants' infringements, thus further inhibiting us from not only developing but maintaining the good will and reputation associated with the DIGS Brand.

138.    Moreover, as set forth in the Memorandum of Law, Plaintiffs have a very strong l likelihood of success on the merits which in and of itself weighs heavily in finding irreparable harm.

**THE BALANCE OF HARDSHIPS IS CLEARLY IN FAVOR OF PLAINTIFFS**

139.    Here, there can be no doubt that the balance clearly favors Plaintiffs. The Subject Marks belong to Plaintiffs. By allowing Defendants to continue associate themselves with the Subject Marks, Plaintiffs are incurring a loss of goodwill and control over their reputation, not to mention a loss of sales. Defendants, in contrast, will suffer no harm if preliminary injunctive relief is granted except perhaps a decline in sales stemming their being enjoined from "piggy backing" on Plaintiffs' Subject Marks. Indeed, any decline in sales incurred by Defendants would be completely justified as they are only at their current level on account of Defendants' false association with the Subject Marks.

**THE PUBLIC INTEREST CLEARLY FAVORS THE**
**GRANTING OF PLAINTIFFS' REQUEST FOR A TEMPORARY**
**RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

27

140.    As set forth in the Memorandum of Law, Plaintiffs have established a likelihood of confusion as a matter of law. As such, it is clearly in the public's interest to grant Plaintiffs' application in its entirety.

141.    As a result of the foregoing, it is respectfully requested that Plaintiffs' application be granted in all respects.

Wherefore, it is respectfully requested that this Court grant Plaintiffs' the relief requested in all respects.

Evanthia a/k/a Eva Rajwans

Sworn to before me this 11th
day of March 2014

Notary Public

JAHLIL S. FARDAN
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
REG. # 01FA6239749
MY COMM. EXP. APR. 25 2015