```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                                Docket #14cv0538
 DIGS NYC LLC, et al.,                  :

                Plaintiffs,             :

  - against -                           :

 G.M. MADONNA & CO., LLC,               : New York, New York
                                          May 14, 2014
                Defendant.              :

--------------------------------------- :

                       PROCEEDINGS BEFORE
                  THE HONORABLE PAUL A. CROTTY,
               UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs:       CONOVER LAW OFFICES
                          BY:  BRADFORD D. CONOVER, ESQ.
                               MOLLY SMITHSIMON, ESQ.
                          345 Seventh Avenue, 21st Floor
                          New York, New York 10001
                          (212) 588-9080

For the Defendants:       FINKELSTEIN & PLATT LLP
                          BY:  CHRISTOPHER PLATT, ESQ.
                               ROBERT F. FINKELSTEIN, ESQ.
                          11 Broadway, Suite 615
                          New York, New York 10004
                          (212) 422-7446




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
                                                                  3
          THE CLERK:    Your Honor, this is the matter of
Digs NYC LLC, et al. v. G.M. Madonna & Co., LLC, et al.,
Docket Number 14cv0538.  Counsel for the plaintiff, please
state your appearance for the record.
          MR. BRADFORD CONOVER:   Good afternoon, Your
Honor, my name is Bradford Conover, Conover Law Offices,
and with me today is Molly Smithsimon of my office.
          HONORABLE PAUL. A. CROTTY (THE COURT):  All right.
Good afternoon.
          THE CLERK:   For defendant.
          MR. CHRISTOPHER PLATT:   For the defendant, I'm
Christopher Platt from Finkelstein Platt, LLP, and with me
is Robert Finkelstein also.
          THE COURT:   Mr. Platt and Mr. Finkelstein.  All
right.  Mr. Conover, do you want to go first?
          MR. CONOVER:   Yes, thank you, Your Honor.  Your
Honor, as you know there was -- prior counsel brought in
for a preliminary injunction back in March.
          THE COURT:   Yes.
          MR. CONOVER:   It was a hearing before Your Honor.
          THE COURT:   Correct.
          MR. CONOVER:   And we sent a letter to Your Honor
for a pre-motion conference today concerning three issues.
First, revisiting the preliminary injunction motion,
```

4

second, addressing the issue of the counterclaims and the potential motion to dismiss, and the third, which was raised by Your Honor, a possibility of mediation.

THE COURT: Yes.

MR. CONOVER: On the first issue, the injunction, you will see from comparing the Exhibits, I believe it's Exhibit B with my letter with Exhibit 3 to Mr. Platt's letter, that as soon as we filed this pre-motion letter Ms. Madonna removed the Diggs infringements from her site map.

There is a site map for digsmoda.com with contains what they call URL addresses and she had 213 URL addresses, 5 of which had my client's trademarks names -- Digs, Digs Couture, etc.

I checked the screen on, I believe it was April 8th and they were still all up there. We filed the letter on that Friday, April 11th, and by the next Tuesday, April 15th, she had removed those five. So she's behaved exactly the way she behaved back in March. As soon as she unnoticed that she was being --

THE COURT: I thought you wanted them removed.

MR. CONOVER: We do, but I'm just telling you --

THE COURT: Well, if they're removed what's the problem?

MR. CONOVER: Well, Your Honor, the case law's

```
                                                                   5
 1
 2   quite clear, particularly in trademarks where there is
 3   recurrent behavior.  Removal of those violations does not
 4   make the issue moot.  But if the history of the particular
 5   party suggests that that may occur again, the Court is
 6   empowered to enter an injunction.  That is our concern,
 7   Your Honor.  That's the first issue.
 8            The second issue is we contacted register.com.
 9   They are the entity that registers a domain name.  It
10   appears that the domain name digsmoda.com shares the exact
11   same address with Madonna.com.  So what she has done is she
12   has taken the digsmoda.com IP address, which is a series of
13   numbers, and she used that same address for her new company
14   Madonna.com.
15            So when you go to the -- if you to go to the
16   computer today and you were to do a Google search for Digs,
17   our client's trademark, Ms. Madonna's website would come up
18   first.  That's a clear violation.  That conduct is in --
19   violated and infringing on a trademark and that can be
20   easily corrected.  Ms. Madonna represented to Your Honor at
21   the last hearing that she wants no association with Digs.
22   Fine.  All you need to do is change your IP address.
23   That's the second issue.
24            The third issue --
25            THE COURT:  If she were to do that what would
```

```
 1                                                           6
 2   happen then?
 3              MR. CONOVER:    Then when you put in Digs, Digs
 4   would come up, the company Digs would come up.
 5              THE COURT:    No, no, what would happen in -- I
 6   understand that.  But what would happen in terms of what
 7   relief you're seeking?
 8              MR. CONOVER:    If she were to do that, that would
 9   solve the relief we're seeking.  We wouldn't need an
10   injunction because she would take steps to correct the
11   infringements herself.
12              The third issue which was addressed in the third
13   meeting was in the transfer agreement Ms. Madonna was
14   allowed to essentially redirect traffic that went to
15   digsmoda.com to her new company.  That's the only thing she
16   was allowed to continue to do.
17              She's taken the business and -- she changed the
18   business from Digs to Digs Moda and is listing it on Yelp.
19   And then she's saying the Yelp -- Digs Moda has been
20   renovated or changed is now Madonna.  She has no right to
21   do that under the transfer agreement.  They have protested
22   saying, well, we can't control Yelp.  As a matter of fact,
23   we think she can.  She can ask them to delete it, contact
24   the legal department.  We're happy to write joint letter
25   if, you know, my read of the transcript is everybody
```

```
                                                                  7
 1
 2   agrees.  She doesn't want to be associated with Digs so
 3   let's solve the problem and disassociate Madonna from Digs
 4   with the exception of what she's allowed to do is that --
 5   and that's redirect traffic.
 6            So there are three violations, one of which was
 7   cured just prior the -- just after pre-motion letter was
 8   filed.  That's the injunction, Your Honor.
 9            On the motion to dismiss, as you may understand,
10   this was a joint venture in a sense.  That my clients and
11   Ms. Madonna got together.  My clients had a store that sold
12   women's clothing that had been operating for a number of
13   years.  Madonna had left another company and wanted to join
14   with them and operate a business and start one downtown.
15            They did that, they had an operating agreement.
16   Things didn't work out so they essentially went into a
17   divorce and entered into what they called the transfer
18   agreement.  And in the transfer agreement, the intent of
19   the transfer agreement was to allow Ms. Madonna continue to
20   run the store downtown under a new name, Madonna & Co. and
21   my clients would continue with their business, Digs Uptown,
22   and there would be a complete separation.
23            Now one would think there would be an exchange of
24   general releases and that's what my client thought
25   happened.  There was an exchange of general releases and we
```

```
 1                                                              8
 2  believe that's what happened.
 3            When you look at the actual release, the last one
 4  that was actually signed, I will concede, Your Honor, it
 5  appears to be somewhat a limited.  It is not the general
 6  release that my clients thought they had gotten.  But
 7  defendants --
 8            THE COURT:   Excuse me.  They were represented by
 9  counsel.
10            MR. CONOVER:   Yes, they were.  But -- so that
11  brings up another issue.  It's our position that the intent
12  was of the transfer agreement was to supersede the
13  operating agreement and release all prior claims.  We think
14  that's the intent and that's how that agreement should be
15  interpreted.
16            But if the Court believes, as argued by Mr. Platt,
17  that it was only a limited release and that was not the
18  intent, then the operating agreement is still alive and
19  well, and you have to look to the operating agreement with
20  respect to Ms. Madonna's counterclaims.
21            The operating agreement says very clearly that all
22  disputes must arbitrated.  There's a very clear arbitration
23  even related to fraud.  So the first three counterclaims
24  under Section 9 of the U.S. Code must be arbitrated.  They
25  have nothing to do with the transfer agreement.  The
```

```
 1                                                          9
 2   transfer agreement, we are alleging that there are certain
 3   trademark violations.  Ms. Madonna is alleging
 4   counterclaims relate to the trademark agreement --
 5            THE COURT:  Mr. Conover, aren't you kind of
 6   arguing against yourself there?
 7            MR. CONOVER:  In what sense, Your Honor?
 8            THE COURT:  In the sense that you say that, read
 9   properly, the general releases superseded the operating
10   agreement.  Now you're saying that if they don't then the
11   operating agreement is still in effect and that's --
12            MR. CONOVER:  Well, what I'm saying, Your Honor,
13   just to clarify, what I'm saying is it was my client's
14   belief that they received a general release.  Mr. Platt
15   pointed out in his letter that it was actually a limited
16   release --
17            THE COURT:  What -- are you conceding that?
18            MR. CONOVER:  For purposes of argument I'm saying
19   yes, that it appears to be a limited release.  It was, you
20   know, we release everything from the beginning of the world
21   to the end, and then at the end it was added arising from
22   Exhibit 1.  So I looked at the case law and Mr. Platt has
23   an argument.  You may be -- he may be right but what I'm
24   saying is you can't have it both ways.
25            Either there was a superseding agreement and a
```

```
 1                                                                10
 2   release or if there isn't, then the operating agreement
 3   controls, and there's a very clear arbitration provision.
 4   So that applies to the first three counterclaims.  So --
 5           THE COURT:   All right.  And you want to move not
 6   to dismiss them but to --
 7           MR. CONOVER:   Stay.
 8           THE COURT:   -- stay them pending arbitration.
 9           MR. CONOVER:   Right.  And there's no grounds to,
10   based on my review of the law, Your Honor, there's no
11   grounds to stay the court proceedings.  You know, Your
12   Honor has discretion, if you refer part of a case of
13   arbitration, to stay the whole thing.  That's only when the
14   claims are related and the arbitration decision will
15   somehow affect these claims.
16           In this case, the counterclaims, the first three
17   counterclaims, concern the operating agreement.  She's
18   basically saying I was fraudulently induced to loan this
19   money to the company --
20           THE COURT:   And what's the third element of
21   relief you want?
22           MR. CONOVER:   Well, the third element, Your
23   Honor, which I think would solve all of these issues --
24           THE COURT:   Is the mediation.
25           MR. CONOVER:   -- is mediation, yeah.
```

```
                                              11
 1
 2            THE COURT:    Okay.  All right.  Mr. Platt and Mr.
 3   Finkelstein?
 4            MR. PLATT:    Your Honor, first of all, I have to -
 5   - I think there's more things being discussed today then
 6   were addressed in the letter --
 7            THE COURT:    That's all right.
 8            MR. PLATT:    -- and I will -- I'll address the
 9   last item first, this issue regarding the releases, the
10   nature of the extent of the releases, and -- and --
11            THE COURT:    Why don't address mediation first
12   because that's the last item.
13            MR. PLATT:    I think mediation is actually, at
14   this point, I think with respect to the issue that was just
15   raised regarding the releases and the nature of the
16   releases and the plaintiff's desire to arbitrated this, I
17   think this is a premature to mediate.  I don't think that
18   that -- I think that at the very least --
19            THE COURT:    No, let's focus on mediation where
20   you take the litigation and the arbitration and put it
21   aside and say we're two small businesses.  We want to
22   separate.  We want to go -- we're going to go our own ways
23   because we can't get along. What's the best way of
24   achieving that.  There's a business way of achieving that
25   which is far superior to the litigation mode we're adopting
```

```
                                                              12
 1
 2  in.
 3              So I want to talk about why do you object to
 4  mediation.  Now, I understand that both sides have to want
 5  to mediate if it's going to be successful at all.  And you
 6  can't be looking for victory; you can be looking for a
 7  solution to get you out of this quagmire that you're in.
 8              Now, you're both good lawyers.  You know, your
 9  clients have a dispute.  The way to end this is not through
10  litigation but through mediation.  So what's your objection
11  to mediation?
12              MR. PLATT:  Your Honor, I agree with you.  I like
13  mediation.  I think it's a wonderful way to resolve
14  disputes but I also do believe that there has to be a good-
15  faith desire to actually resolve a dispute.
16              THE COURT:  I agree with that too.
17              MR. PLATT:  I believe --
18              THE COURT:  But your client says she wants to be
19  free of this -- the prior relationship and the plaintiffs,
20  they want to be free of the prior relationship.
21              MR. PLATT:  Your Honor, I don't believe that's
22  the case.  And I think the course of conduct here, with
23  these preliminary injunctions or request for preliminary
24  injunction, and again, what they're asking for, again
25  relating to this, it's been almost quite bizarre in the
```

                                                                13

sense they come to court, they don't make a phone call to
the defendants or to counsel, they continually come to
court and they argue and raise issues that are irrelevant
or non-infringements.

          There's, for example, today.  They're raising the
issue of the Yelp page.  It's a third-party website that
they are saying, again, the request that the asked the
Court was they said that they would be happy if the
defendants would write a joint letter with them to Yelp.
Well, the defendants have always been ready, willing and
able to do so.  And in fact, attached to my letter dated
the same day as I think we left the last hearing, was a
letter from Yelp to my client which copied her letter
begging them, basically, to take this down.

          There's no bad faith on the side of the defendants
here with respect to wanting to disassociate themselves.
The fact that we --

          THE COURT:   Nor did -- I didn't suggest that.

          MR. PLATT:   -- don't get a phone call --

          THE COURT:   I didn't suggest that, did I?

          MR. PLATT:   No, Your Honor, but what I'm saying
is that I think the actual bad faith is on the side of the
plaintiffs who do want to make the defendants continually
spin wheels.  I don't believe that we're in a position that

```
 1                                                            14
 2   we would reach resolution in mediation.  That's the
 3   problem.
 4              Defendants retained new counsel, they wrote this
 5   letter.  We never -- I'm sorry -- plaintiffs retained new
 6   counsel.  We never got a phone call regarding these issues,
 7   regarding the preliminary injunction issue.
 8              The first issue they raised, that digsmoda.com,
 9   the website, the site map, that was an abandoned site map
10   that wasn't even being searched by search engines.  It had
11   no relevance.  The second part of that issue that they
12   raised, quote, the redirect, the redirect is actually the
13   membership transfer agreement, which is extremely thorough,
14   was part of the consideration for the transfer.
15              And sort of -- I don't really quite understand the
16   argument because on the one hand they argue that the
17   redirect was not allowed.  But then secondly they said the
18   only thing that was granted was a redirect of the
19   digsmoda.com.
20              So I really, in some levels, don't even know what
21   they're asking for when they've been making these
22   applications to the Court relating to the actual marks and
23   the alleged infringements.
24              So based upon that my client believes and I
25   believe, at least from the course of conduct, that there
```

```
                                                             15
 1
 2  isn't really a good-faith effort on the side of the
 3  plaintiffs to resolve this.
 4           THE COURT:    So what would you --
 5           MR. PLATT:    I wish there were.
 6           THE COURT:    Okay.  So what would you recommend
 7  that I do?
 8           MR. PLATT:    I think we should move forward with -
 9  - if they want to make this motion to dismiss that should
10  move forward, or they should reply and we can -- I think we
11  should start talking.  If in talking with counsel I believe
12  that there was actually a good-faith effort to resolve
13  this, I think mediation would be -- would make sense.  This
14  is the first time that I've even been able to speak or even
15  hear plaintiff's counsel.
16           THE COURT:    Well, the Rules in the Second
17  Circuit, we have these pre-motion conferences and they have
18  been mandatory pre-motion conferences, but I can't stop the
19  parties from making whatever motions are allowable under
20  the Rules.
21           So if Mr. Conover wants to move for
22  reconsideration of the decision on the preliminary
23  injunction, I guess he's free to do that.  I don't think
24  it's going to prevail, Mr. Conover, but you're free to make
25  the motion.  Same with the motion to dismiss.  You can make
```

```
                                                                  16
   a motion to dismiss the counterclaims.  When would you do
   that?
            MR. CONOVER:   We could file it within 30 days,
   Your Honor.
            THE COURT:   Okay.  Now, and Mr. Platt, how much
   time do you need, let's say -- 30 days from today is --
   today in the 14th.
            MR. PLATT:   Two weeks?
            THE COURT:   Yeah, you do it by June the 13th, Mr.
   Conover, and two weeks from that would be the 27th of June.
   And then any reply would be by the 7th.
            But I wish you'd take my advice and take me to
   heart that, you know, if you want to separate that the way
   you should separate -- you know how to separate.  And if
   you need help with mediation that's what you should seek.
   Litigation is not the answer here.
            Also, the other thing that you have to do, is
   submit a civil case management plan.  And I was reading my
   -- the transcript of the March preliminary injunction
   hearing and I asked for an answer which G.M. Madonna
   provided.  And I also asked for a civil case management
   plan so you ought to sit down and do the civil case
   management plan.
            I'm not going to stay discovery pending any of
```

```
 1                                                          17
 2   these matters that ought to be discovery because I don't
 3   think that the -- the likelihood of granting a preliminary
 4   injunction based on what the record is in Mr. Conover's
 5   letter of April 11th is very, very slim indeed.
 6              The motions to dismiss part of the counterclaims,
 7   I've reached no tentative conclusions.  I just don't know
 8   enough to give you a sense of where I am on that.
 9              I do know this:  The way out of this problem for
10   all sides is mediation.  So the dates to, just to
11   recapitulate, Mr. Conover, you make your motions, all of
12   them, by June 13.  Mr. Pratt, you're going to respond by --
13   Platt, I should say -- you respond by the 27th.  And the
14   reply will be by July 7th.  If you have any problems in the
15   meantime, call, and we'll set up a conference.
16              Thank you very much.
17              MR. PLATT:   Thank you, Your Honor.
18              MR. CONOVER:   Thank you, Your Honor.
19                 (Whereupon the matter is adjourned.)
20
21
22
23
24
25
```

```
 1                                                              18
 2                    C E R T I F I C A T E
 3
 4         I, Carole Ludwig, certify that the foregoing
 5   transcript of proceedings in the United States District
 6   Court, Southern District of New York, Digs NYC LLC, et al.
 7   v. G.M. Madonna & Co., LLC, et al., Docket No. 14cv0538,
 8   was prepared using digital electronic transcription
 9   equipment and is a true and accurate record of the
10   proceedings.
11
12
13
14
15   Signature_____
16
17   Date:   June 9, 2014
18
19
20
21
22
23
24
25
```